## Case No. 17,739.

WILLIAMS et al. v. SUFFOLK INS. CO.

[3 Sumn. 510;[1] 2 Law Rep. 76.]

Circuit Court, D. Massachusetts. May Term, 1839.

MARINE INSURANCE— BREAKING UP OF VOYAGE— CAPTURE AND RECAPTURE—SALE FOR SALVAGE —TOTAL LOSS—GENERAL AVERAGE.

1. A ship on a sealing voyage visited the Falkland Islands, where the master, with the second mate and four of the best men, were captured by Lewis Vernet, acting governor of those islands. The ship itself was also seized, and, after being in the hands of the captors two or three days, was recaptured by the mate and part of the crew remaining on board, who brought her home, and libelled her for salvage. *Held,* that from these events there was a loss of the voyage from necessity, so that the underwriters were liable as for a constructive total loss.

[Cited in Gates v. Madison Co. Mut. Ins. Co., 5 N. Y. 479.]

2. The necessary sale of a vessel in the course of a voyage to defray salvage creates of itself a total loss of the vessel for the voyage.

3. Where the object of the voyage is entirely defeated, and the vessel is obliged to return home, it cannot be treated as a case of a voyage to a port of necessity for repairs, but there is a total loss.

4. No loss or expense is to be considered as general average, and so applied in making up a loss, unless, in the first place, it was intended to save and preserve the remaining property, and unless, in the second place, it succeeded in doing so.

[Cited in The Joseph Farwell, 31 Fed. 845; The L'Amerique, 35 Fed. 838.]

5. The expenses and charges of going to a port of necessity to refit can properly be a general average, only when the voyage has been, or might be resumed. But the doctrine does not apply, if the voyage has been abandoned from necessity.

This was a case upon a policy of insurance, which had been heard before [Case No. 17,-738], and now came on upon the report of

[1] [Reported by Charles Sumner, Esq.]

Willard Phillips, Esq., an assessor appointed to report the facts, whether there was a loss of the vessel insured, the Breakwater, from necessity. The assessor made his report in substance as follows: By the policy, the plaintiff was insured $3,500 on the Breakwater, and $2,000 on outfits at and from Stonington, commencing the risk on the 12th of August, 1830, to the Southern hemisphere for a sealing voyage, with liberty to put skins on board of any other vessel "until she returns to her port of discharge in the United States. It being understood, that the value of the interest hereby insured, as it relates to his insurance, is not to be diminished thereby." At the end of the first season—about March, 1831, the Breakwater visited the Falkland Islands, within the liberty given in policy, and for purposes connected with the voyage. The captain, with the second mate and four of the best men, and a seal boat, were captured by Lewis Vernet, acting governor of those islands. The schooner was also captured or seized, and after being in the hands of the captors two or three days, was recaptured by the mate and part of the crew remaining on board, who brought her home. After her arrival she was libelled for salvage in the district court of Connecticut, and salvage was awarded of one-third part of the proceeds of the vessel and property.

In regard to a total loss by the breaking up of the voyage, the mate testified explicitly, that the capture deprived the Breakwater of the following requisites for prosecuting the voyage: (1) A navigator, he being the only one after the detention of the captain, and it being necessary that there should be two at least on board, one to go out with the boats, the other to remain with the vessel, and he had no certain means of finding another navigator short of returning to the United States, if he had proposed still to prosecute the voyage. (2) The best men had been taken out and detained, and he could not procure other suitable hands to supply their places without returning to the United States, it being requisite that a vessel should have a certain number of men skilled in this kind of voyages. (3) The loss of the muskets, the method of killing the fur seals of late years being by shooting, for the most part, or, at least, in a great part, and that a vessel is not equipped for such a voyage without a supply of muskets and ammunition. These he supposed he might have obtained short of the United States, had he been otherwise prepared and disposed to pursue the voyage. (4) Loss of seal boat with the captain, which he could not have replaced short of the United States, and a vessel with one seal boat only would not be fit to prosecute this species of sealing, and could not prosecute it to any advantage, or with any safety, since two boats always go in company to render each other assistance in case of accident. (5) Another reason for not prosecuting the voyage was the danger of being captured by Vernet, who then had

at his command three vessels,—a part, or all, of which he had captured,—and seventy or eighty men. (6) The loss of the ship's papers by the capture was one objection to prosecuting the voyage, though the mate was of opinion, that, as it was a time of peace, this objection would not of itself have been conclusive. (7) He could not prosecute the voyage without coming home to refit, and he could not come home to refit without losing the sealing season.

Upon these facts the assessor reported that, by reason of the capture, there was a loss of the Breakwater by necessity.

Charles G. Loring, for plaintiffs.
Theophilus Parsons, for defendants.

STORY, Circuit Justice. It appears to me, that the assessor is right in the conclusion, which he has drawn, that there was a loss of the voyage by necessity, from the capture and other events stated in his report. I cannot treat this as the case of a voyage to a port of necessity for the mere purpose of new equipments and repairs to resume the voyage; but there was a total loss of the voyage itself. The sealing season was lost. The vessel was compelled to return home. A new master and crew were to be hired, and to be hired upon new terms, exactly as if a new voyage was commenced. New outfits were required, and to be useful they must be co-extensive with the whole period of the new voyage. Besides, the vessel was liable to, and was libelled, and sold for, salvage. That sale put an end at once to the original ownership and voyage; for after the sale it was utterly impossible to resume the voyage insured. New interests, new rights, and new parties had intervened. The necessary sale of a vessel in the course of a voyage to defray salvage creates of itself a total loss of the vessel for the voyage; and in a case like the present, there was thereby a total loss of the voyage also as to the outfits insured.

The question, therefore, of general average, which might arise, if the voyage to Stonington were a mere voyage to a port of necessity to refit and resume the original voyage, does not in my judgment become material to be considered. General average can only arise, where the sacrifice has been made for the common benefit, and has accomplished the object. The expenses and charges of going to a port of necessity to refit can properly be a general average only when the voyage has been, or might be, resumed. If it has been abandoned from necessity, then it is not a case for the application of the doctrine. The present case must be treated upon the basis of a constructive total loss by the perils insured against, where there has been a due abandonment to the underwriters.

As I understand the policy, the value insured upon the outfits is to continue undiminished during the whole voyage; that is to say, it is to be treated as a case where the outfits are valued at the sum insured for the whole voyage, without any regard to their diminution by waste, or by consumption, or by the transshipment of any of the seal skins, the product of the enterprise, in any other vessel during the voyage. I do accordingly confirm the report of the assessor, and recommit the report to him, with directions to ascertain and report the amount due to the plaintiffs, upon the basis of a constructive total loss of the Breakwater, and her outfits, during the voyage.