*Absalom Backus, Jr. and another v. Hugh Coyne.    [*5]

*General average.* The doctrine of general average is founded upon sound equitable principles and is enforceable in ordinary cases in a court of common law.

*Partnership: Submission to arbitration: Implied authority of partner: Special agreement: General average: Arbitration.* An individual partner has no power, without special authority for that purpose from his co-partners, to submit partnership matters to arbitration; and an adjustment of a claim for general average, by a third person selected for the purpose under a special agreement, contemplating the introduction of witnesses, the statements of the parties and the submission of bills and other papers for consideration, is tantamount to an arbitration, and something more than an apportionment merely, from items agreed upon, according to the usual custom and law of general average.[1]

*Submission to arbitration.* While an agreement to abide by the statement of a third person as to a disputed fact, or a reference to a third person to make a mere clerical computation from an agreed state of facts, as the computation of interest upon a note may not be considered analogous to a submission to arbitration, yet where witnesses are examined and the person to whom the submission is made is called upon to exercise his best judgment upon the matter in controversy, and to decide conclusively between the parties, according to the law and the facts, upon a consideration of testimony and arguments to be submitted to him, this must be considered a case of arbitration.

*Submitted on briefs June 21.    Decided October 13.*

Error to Superior Court of Detroit.

*Barbour & Rexford* and *F. H. Canfield,* for plaintiffs in error, to the point that the doctrine of general average cannot been forced in a common-law court, cited: *Rossiter v. Chester,* 1 Doug., 154; that a general average bond executed by one partner in the firm name is not admissible in evidence against objection in an action against the firm, without proof of the authority of such partner to execute the same, or of a ratification thereof by the firm: *Skinner v. Dayton,* 19 Johns., 513; *Cady v. Sheperd,* 11 Pick., 400; *Cram v. Seton,* 1 Hall, 263; *McBridge v. Hagan,* 1 Wend., 326; that the agreement testified to by plaintiff was in effect one to submit a part-
[*6]    nership matter to arbitration, and being *with one member only of the defendant firm, and without the assent

---

[1] An individual partner has no power to submit a partnership matter to arbitration, without the consent of his co-partners: *Steele v. Salt,* 3 Bing., 103; *Adams v. Bankart,* 1 Cr. M. & R., 681; *Harrington v, Higham,* 13 Barb., 660; *Karthaus v. Ferrer,* 1 Pet., 228; *Martin v. Thrasher,* 40 Vt., 460.    Contra: *Hallack v. March,* 25 Ill., 48; *Southard v. Steel,* 3 T. B. Mon., 435; *Taylor v. Coryell,* 12 S. & R., 243; *Gay v. Waltman,* 89 Pa. St., 453.    In these cases the submission was not under seal.

of the other partner, it was not binding in an action against the firm: *Buchoz v. Grandjean,* 1 Mich., 367; *Stead v. Salt,* 3 Bing., 101; *Karthous v. Ferrer,* 1 Pet., 222; *Antram v. Chace,* 15 East, 209; 3 Kent Com., 49; Story on Part., § 114; Collyer on Part., § 439, that submission is the technical designation of that contract by which parties agree to refer matters which are in dispute, difference or doubt between them, to be finally decided by the award of judges named by the parties, and called arbitrators: Morse on Arb. and Award, 36; Bouv. Law Dic.; that there is a dispute, controversy, or honest difference of opinion between them, is enough: *Findley v. Ray,* 5 Jones (N. C.), 125; *Mayo v. Gardner,* 4 Id., 359; *Brown v. Wheeler,* 17 Conn., 349; *Smith v. B., C. & M. R. R. Co.,* 36 N. H., 458; *Efner v. Shaw,* 2 Wend., 567.

*Moore & Griffin,* for defendant in error, to the point that the liability in general average is a common-law liability, and that the master or owner can maintain assumpsit against each shipper for the amount severally due, cited: 1 Pars. on Ship. and Ad., 478; *Sherwood v. Ruggles,* 2 Sandf., 55; *Birkley v. Presgrave,* 1 East, 220; *Dobson v. Wilson,* 3 Camp., 480; that *Rossiter v. Chester,* 1 Doug., 154, was decided before the admiralty jurisdiction was extended over the lakes, and is not now considered as authority: 1 Pars. on Ship., 340, 343 and cases cited; and they argued that the agreement was not one of submission to arbitration, any more than is the selection of an inspector on the sale of lumber, there being no dispute between the parties as to the items, and the aid sought being but that of an adjuster, to make the proper apportionment whose functions were ministerial merely; and that one partner can sign an average bond for his firm.

[*7] MARSTON, J.:

Defendant in error brought an action of assumpsit against plaintiffs in error, copartners, who were doing business under the firm name of Backus Bros., upon a general average claim, which had been assigned to him by John Stewart.

It is first objected that the doctrine of general average cannot be enforced in a court of common law, and *Rossiter v.*

*Chester*, 1 Doug., 154, is relied upon. It was held in that case that the great lakes of this country were not subject to admiralty jurisdiction. This was really the principal question in that case, and the court held, as a necessary consequence of the views taken in the discussion of the main question, that the doctrine of general average was known only to the maritime law, and could not be enforced in a court of common-law jurisdiction. The supreme court of the United States since then has held that admiralty jurisdiction did extend over the lakes, and this is now the universally recognized doctrine. We do not therefore consider ourselves bound by what was said in *Rossiter v. Chester*, touching the questions raised in this case.

The general average that is to be made, towards a loss sustained by some for the benefit of all, is founded upon sound equitable principles. And where a loss occurs which gives rise to the principles of general average, and the goods which have been saved by the sacrifice of other property have been delivered over to the owner, we see no good reason why a promise should not be implied, upon the ground that in equity and good conscience he should contribute to the loss which others sustained for his benefit, nor why such promise might not be enforced in a common-law court. There may be cases where, on account of the number of parties interested, difficulty might arise, which might not in a court of equity, but none such arises in this case.

In *Scaife v. Tobin*, 3 B. & Ad., 523, where it was sought to hold a consignee, not the owner of the goods, liable to *pay general average, Lord Tenterden, C. J., said: [*8] "A consignee, who is the absolute owner of the goods, is liable to pay general average, because the law throws upon him that liability. There is no other person to pay it." And Littledale, J., said: "There is no doubt that an absolute owner of goods is liable to pay general average." In *Dike et al. v. Propeller St. Joseph*, 6 McLean, 573, speaking of general average, it was said that this contribution might be recovered in law or equity. "If the demand be a lien upon any property within reach of the court, the proceedings may be *in rem;* and

if any individual within the process of the court is liable, the proceedings may be against him *in personam.*"

To the same effect is 1 Parsons on Maritime Law, 334; Abbott on Shipping, 508, citing *Marsham v. Dutrey*, Select Cases of Ev., 58; *Birkley v. Presgrave*, 1 East, 220; *Dobson v. Wilson*, 3 Campb., 480. We have not been referred to any cases, nor have we been able to find any, except *Rossiter v. Chester*, holding that the common-law courts have no jurisdiction in this class of cases.

The only other objection we consider it necessary to notice, grows out of that portion of the court's charge to the jury, that the submission made by Absalom Backus to Mr. Clark was not a submission to arbitration, but was a mere submission to him to adjust or make the proper apportionment between the parties from items already agreed upon; and therefore that Absalom Backus had authority as a member of the firm of Backus Bros. to bind his copartner by such submission.

It was conceded by both court and counsel that a partner could not submit partnership matters to arbitration without a special authority for that purpose from his copartners.

From an examination of the record in this case, I am not at all satisfied that the parties (Stewart and Absalom Backus) had agreed as to the items, and merely required a proper apportionment. Even conceding the distinction drawn by the court to have been correct, it was not claimed that [*9] *the adjustment was made in the usual manner, or according to custom, but in accordance with a special agreement entered into between Stewart and Absalom Backus. Witnesses were introduced and examined. Absalom Backus and Stewart each made a statement, bills and other papers were submitted to Mr. Clark, and from all these he was to and did make the adjustment, according to the agreement, so far as the agreement governed, and in other respects according to the usual custom and law of general average.

I think, therefore, it cannot be said that here was a case of apportionment only, from items agreed upon, according to the usual custom and law of general average. The adjustment was not in accordance with custom, but in accordance with

the agreement of the parties. It was not such an adjustment as the law, if left to itself, would have made. Whether it was in fact more or less favorable to the firm is immaterial, as that is not the correct test of a partner's power. Certain questions, both of fact and law, were submitted to Mr. Clark. His decision was sought to be made conclusive between the parties in this case. His duties were not merely clerical, but required the exercise of judgment.

An agreement to abide by the statement of a third person, as to a disputed fact, or a reference to a third person to make a mere clerical computation from an agreed state of facts, as the computation of interest upon a note, might not be considered as analogous to a submission to arbitration.— *Grimes v. Blake*, 16 Ind., 162. But where witnesses are examined, and the person to whom the submission is made is called upon to exercise his best judgment upon the matter in controversy, and to decide conclusively between the parties according to the law and the facts, upon a consideration of all the testimony and arguments submitted to him, we think this must be considered a case of arbitration, and beyond the power of one partner to make on behalf of the firm, without a special authority for that purpose from his copartners.—*Buchoz v Grandjean*, 1 Mich., *367; *Smith v. B., C. & M. R. R. Co.*, 36 N. H., 458; *Savercool v. Farwell*, 17 Mich., 321; *Ortman v. Green*, 26 Mich., 212. [*10]

Where parties submit their disputes to the judgment and decision of a third party, whose decision is to be final and binding, it would be very difficult, even should the attempt be made, to draw a line by which it might be determined whether a given case should be considered as a submission to arbitration or otherwise. The only safe rule would be to consider all cases of dispute, when thus referred, to be a submission to arbitration.

Upon this point I think the judgment should be reversed, with costs, and a new trial ordered.

The other justices concurred.