## THE "NEW ORLEANS."

1. The court, upon the facts found by the Circuit Court, affirms the decree whereby the steamer "New Orleans" was condemned to pay the damages occasioned by her collision with a schooner.

2. The evidence which in another suit a part owner of the schooner gave as to the extent and cost of the repairs put upon her, is not in this suit admissible against the other part owners.

APPEAL from the Circuit Court of the United States for the Southern District of New York.

The owners of the "Allie Bickmore" filed, in their own behalf and as carriers of her cargo, their libel in a cause of collision, civil and maritime, against the "New Orleans." The District Court adjudged the "New Orleans" to be wholly in fault, and rendered a final decree accordingly for $15,682.37, with interest thereon and costs. Both parties appealed to the Circuit Court, which found the following facts:—

1. A little after five o'clock in the morning of the 6th of September, 1874, a collision occurred between the schooner

"Allie Bickmore," owned by the libellants, and the steamer "New Orleans," in the Atlantic Ocean, about forty miles south-easterly from Cape Henlopen.

2. The schooner had a carrying capacity of over six hundred tons, though she registered only three hundred and ninety or thereabouts. She was less than a year old, and bound on a voyage from Fernandina, Florida, to New York, with a full load of pine lumber, stowed below and on deck.

3. The steamship was 245 feet long, and of 1,448 tons burden. She was on one of her regular trips between New York and New Orleans.

4. When the collision occurred it was broad daylight, and a vessel without lights might have been seen at least two miles away. The wind was very light from the southward and eastward, but a considerable swell was rolling from the southeast.

5. The course of the schooner was about NE. by N. She had all sails set, but there was not wind enough to keep them full, and she was not making more than a mile and a half or two miles an hour. Her lights were properly set and burning, and she was in all respects well equipped and manned.

6. The course of the steamer was about S. by W. ½ W., and her speed eleven miles, or a little more, an hour. This was full speed. About twenty minutes before the collision her lookout was withdrawn from his station on the forecastle and set to work, with all the other men then on watch, washing decks. The second officer, whose watch it was, was with his men superintending their work. From the time the lookout was withdrawn there was no one where he could in any respect perform that duty except the man at the wheel, and he did not discover the schooner until his attention was called to her by the mate at the time and in the manner hereinafter stated.

7. When the vessels were two or three miles apart the steamer was discovered, and duly reported by the lookout on the schooner. From that time she was closely watched. The schooner was kept steadily on her course until the steamer was not more than seven or eight hundred feet away, when, the danger of collision being imminent, the second mate, who was on deck, gave an order to luff, and at the same time called out

an alarm to the steamer; but before any material change in her course had been made the vessels came together.

8. The schooner was not seen at all from the steamer until the second mate, hearing the cry of alarm which came from her, stepped from where he was standing on the main deck to the starboard side, and saw her close upon him. He immediately ran up from the main deck into the wheel-house, where he ordered the wheel to port, at the same time assisting to port it over himself. The order to port aroused the captain, who was in a room opening out of the wheel-house, and he, without stopping to put anything on, opened his door, and, seeing the schooner, rang the proper bells to slow and stop. Before the course of the steamer was materially changed by the porting of the wheel, or her headway was sensibly affected, she struck the schooner on the port bow, between the stern and the cathead, and cut into her about twenty feet on a line but slightly angling across the keel. The wound extended very nearly to the foremast, and to within four feet of the keel.

9. In a short time the steamer took the schooner in tow and carried her to the Delaware breakwater. From there she was taken by a tug to Philadelphia, where she was unloaded, and her cargo taken on to New York. She was also put in repair and refitted at that port.

10. The account of damages as stated by the commissioner in his report is sustained by the evidence, except the item of $1,000 for damages to the starboard side. As to that the evidence shows that when the repairs were completed the vessel was in as good general condition as she was before the collision, and that if the bill of Bisely, Hillman, & Streaker is paid in full, without the deduction of $600 for increase of value, full compensation will be made for any injury to the starboard side.

The court found as conclusion of law, —

1. That the collision was caused solely by the fault of the "New Orleans" in not keeping a sufficient lookout, and in not seeing the schooner in time to keep out of her way.

2. That the libellants are entitled to recover for the amount of the decree below with interest on $14,026.92 from the date of that decree, at the rate of six per cent per annum.

The court also held that as both parties had appealed and the decree below was sustained, the costs of the Circuit Court must be equally divided between them.

Upon the hearing before the commissioner, the claimants offered in evidence the testimony of the owner of one-fourth of the schooner in reference to the value and amount of the repairs put upon her, which he gave in another suit. The evidence was, on the objection of the libellants, excluded, and an exception duly taken.

A decree was rendered in favor of the libellants, and the claimants thereupon appealed.

*Mr. John E. Parsons* for the appellants.
*Mr. Henry J. Scudder* for the appellees.

MR. JUSTICE FIELD delivered the opinion of the court.

The findings of the Circuit Court, which are conclusive here, show that the steamer was wholly in fault for its collision with the schooner; and she was therefore justly condemned to pay all the damages inflicted.

The only question open for our consideration arises upon the exception to the exclusion by the commissioner of the testimony given in another suit by one of the part owners of the schooner as to the extent and value of its repairs. The exclusion, we think, was correct. The statements of the part owner, expressing his judgment as to the matters upon which he was examined, could, at most, bind only himself. They were not evidence against his co-owners, who were merely tenants in common with him, not partners. Story on Partnership, sect. 453.

*Decree affirmed.*