## MINOR v. COMMERCIAL UNION ASSUR. CO., Limited.

### (District Court, N. D. California. November 29, 1893.)

### No. 10,252.

**1. GENERAL AVERAGE—STATE STATUTES—WHEN CONTROLLING.**

An adjustment in general average, made in California, under contracts of insurance entered into in that state, is governed by the California Civil Code, and therefore the freight must be valued at "one-half the amount due on delivery," as prescribed by section 2153, without regard to the customs of merchants or underwriters.

**2. SAME—CONTRACT AS TO VALUATION—CONSTRUCTION.**

An agreement that an adjustment in general average shall be made on the "following basis," followed by a statement of the amount to be contributed for the valuation of the ship after collision, and the valuation of the freight and the cargo, does not mean that the freight shall be assessed on its gross valuation, but merely that such valuation shall be taken as the foundation upon which the adjustment shall be made according to law; and if the law applicable prescribes that the freight shall be assessed at one-half its gross value, as in California, this will prevail.

In Admiralty. Libel by Theodore H. Minor against the Commercial Union Assurance Company, Limited, to recover on an adjustment in general average. Libel dismissed.

E. W. McGraw, for libelant.

Andros & Frank, for respondent.

MORROW, District Judge. This is an action to recover on an adjustment in general average on two policies of insurance issued by the respondent corporation on freight on certain cedar logs laden on the barkentine Marion for a voyage from Point Arena, Central America, to San Francisco. The libel states two causes of action.

The first cause of action is to recover the sum of $291.49, the balance of the sum of $723.73, for the payment of which it is averred the respondent was liable under an adjustment in general average on a policy issued by the respondent, and dated the 19th day of

August, 1889, wherein it insured in the sum of $2,000 freight on cedar laden on the barkentine Marion on a voyage from Point Arena, Central America, to San Francisco.

The second cause of action is to recover the sum of $37.31, the balance of the sum of $92.64, also averred to have become due from the respondent under an adjustment in general average on a policy issued by the respondent, and dated March 7, 1890, on freight valued at $384 on cedar logs for the same voyage mentioned in the first cause of action. This policy was issued after the average expenditure occurred, but the covering note was issued prior thereto, so that the date of the policy is immaterial.

The material facts are that on the 18th day of February, 1890, the barkentine Marion, then on the voyage from Point Arena to San Francisco, when off the "Heads," came in collision with another vessel, in consequence of which the barkentine was injured to such an extent as to render it necessary to procure the aid of the tugboat Reliance to tow her into the port of San Francisco,—a service which was successfully performed. On the 10th day of June, 1890, J. D. Spreckels & Bros., the owners of the tug Reliance, filed, in a cause of salvage, a libel in this court against said barkentine, to recover for the above-mentioned services, and also for services rendered in pumping the water from the said vessel, the sum of $2,487.50, alleging special contracts to pay that sum. Such proceedings were thereafter had that on the 9th day of February, 1891, this court upheld the contracts set forth in the libel, and pronounced for the amount claimed. The vessel only was proceeded against.

In delivering the opinion of the court Judge Hoffman said:

"But I do not see how this amount, which is the total compensation for saving ship and cargo, can be collected from the vessel alone, the cargo not having been libeled. * * * In general, the vessel is not liable for the proportion of salvage due by the cargo. An interlocutory order will be made referring the matter to the commissioner to ascertain and report the proportionate share of salvage due from the vessel."

No hearing was had on this reference, for the reason that the underwriters on the freight and cargo, as well as on the hull, agreed in writing among themselves—among whom was the respondent—to waive the fact that the cargo and freight had not been proceeded against, to accept as correct the said sum of $2,487.50, and to contribute for the same in general average. The following is the agreement as it is set forth in the libel:

"We, the undersigned, do hereby consent that an adjustment of the loss on the barkentine Marion, which occurred February 18th, 1890, may be made by C. V. S. Gibbs, adjuster, on the following basis: Salvage to be paid to J. D. Spreckels & Bros., $487.50; valuation of Marion after collision, $3,000.00; valuation of freight, $2,956.06; valuation of cargo consigned to Parrott & Co., $2,970.45; valuation of cargo consigned to owners of Marion, $150.00. This stipulation applies to general average adjustment only. We agree to abide by adjustment made on above basis."

—And thereupon C. V. S. Gibbs, the adjuster mentioned in the agreement, made up a statement in general average. By this statement, as appears from the pleadings and the evidence, he took as

the contributory value of the freight the gross amount thereof, to wit, $2,956.06. The respondent claimed that this was erroneous, and that the contributory value of the freight, for the purpose of the average statement, should have been taken at one-half the gross amount thereof, to wit, $1,478.03; made a restatement of the average on this basis, by which it appeared that its proportion of the average on the freight was $487.57, which amount it paid to the libelant. This action is brought to recover $328.80, being the difference between $816.37, found by the adjuster to be due in general average from the respondent as underwriter on freight, taking the gross amount thereof as its contributory value, and $487.57, paid by the respondent, taking one-half of the gross amount of the freight as its contributory value.

Upon these facts three questions were discussed by counsel on the argument:

(1) What is the general usage and custom among underwriters in foreign countries and in the United States, including those of San Francisco, in respect to the rule for ascertaining the contributory value of freight in general average?

(2) Is there any difference, either in principle or usage, in estimating this value, where an extraordinary expenditure growing out of a salvage service is to be contributed for, and any other extraordinary expenditure is to be contributed for in general average?

(3) What is the true construction of the agreement entered into in this case by the underwriters on hull, cargo, and freight, in respect to the contributory value of the latter?

In the argument of counsel the first two questions were discussed in a most able and interesting manner, and the general usage and custom of underwriters in foreign countries and in the United States cited, and the authorities reviewed. In this state, however, the provisions of the Civil Code have been extended to this subject, and the adjustment of general average losses provided for and regulated in the following sections:

Section 2152: "The proportions in which a general average loss is to be borne must be ascertained by an adjustment, in which the owner of each separate interest is to be charged with such proportion of the value of the thing lost as the value of his part of the property affected bears to the value of the whole. But an adjustment made at the end of the voyage, if valid there, is valid everywhere."

Section 2153: "In estimating values for the purpose of a general average, the ship and appurtenances must be valued as at the end of the voyage, the freightage at one-half the amount due on delivery, and the cargo as at the time and place of its discharge; adding, in each case, the amount made good by contribution."

Section 2155: "The rules herein stated concerning jettison are equally applicable to every other voluntary sacrifice of property on a ship, or expense necessarily incurred, for the preservation of the ship and cargo from extraordinary perils."

The suggestion of counsel for respondent, in the note to his brief that the provisions of section 2153 are conclusive as to the rule to be observed in ascertaining the contributory value of freight in general average, seems to me to be unanswerable. The contract of insurance declared on was made in this state, as was also the adjust-

ment in general average; and both were, therefore, subject to the law which provided that in making up the average statement one-half only of the freight due should be taken as the contributory value of the freight. In the absence of any express contract to the contrary, the positive provisions of the statute cannot be controlled or varied by any custom or usage of merchants or underwriters relating to the values on which average statements are to be based. Section 2155 likewise conclusively determines the question whether the amount paid for the salvage service in this case should be contributed for in general average. That the salvage expenditure was "necessarily incurred for the preservation of the ship and cargo from extraordinary perils" is established by the facts in the case, and the judgment of this court upon the salvage claim.

The only remaining question is the proper construction of the agreement as to the contributory value of the freight. The agreement entered into by the underwriters on the hull, cargo, and freight provides "that an adjustment * * * may be made by C. V. S. Gibbs, adjuster, on the following basis." It then states the amount to be contributed for in general average, the valuation of the ship after collision, valuation of freight and valuation of cargo, and it then provides: "This stipulation applies to general average adjustment only," and concludes as follows: "We agree to abide by adjustment made on above basis." It will be observed that the adjustment is to be made not upon the enumerated values, but upon the basis of such values; in other words, the values were to be taken as the foundation upon which the adjustment should be made in accordance with the principles of law. To ascertain the contributory value of freight, it was necessary to have a basis upon which to make the calculation, and that basis is here stipulated as a fact. Upon this primary fact the law determines the contributory value of freight as one-half of its gross value.

It follows as a conclusion from these premises that the adjustment in this case was erroneous in assessing the contribution due in general average on the freight on its gross value, instead of taking one-half of such value, as provided by law; and the respondent is therefore entitled to a judgment dismissing the libel, and it is so ordered.