[S. F. No. 7709.   Department Two.—December 12, 1917.]

LENA FEREM et al., Appellants, v. OLSON & MAHONY (a Corporation), Respondent.

SHIPPING—CO-OWNERS.—Part owners of a vessel are tenants in common.

ID.—PARTNERSHIP.—Cotenants of a vessel are partners in its use but not in its ownership.

ID.—PARTNERSHIP IN USE OF VESSEL—DISSOLUTION—SALE OR LOSS OF VESSEL.—The limited partnership in the use of a vessel which exists between part owners thereof terminates when the vessel is lost or sold.

ID.—PARTNERSHIP FOR VOYAGE—TERMINATION.—For many purposes, the employment of a ship upon a voyage is regarded as a special partnership between the co-owners of the vessel which terminates with the termination of the voyage.

ID.—DISSOLUTION OF PARTNERSHIP—ACCOUNTING.—The mere fact that a partnership has been dissolved establishes *prima facie* the right to an accounting between the partners.

ID.—DISSOLUTION OF PARTNERSHIP—SALE OF VESSEL UNDER LIBEL—ACCOUNTING.—Where a partnership in the use of a vessel was dissolved by a sale of the vessel under a libel, the minority owners had the right to an accounting.

ID.—MANAGING OWNER'S POWERS — GENERAL AVERAGE LOSS ADJUSTMENT.—A managing owner has power to make an average loss adjustment, or cause it to be made, but such adjustment is not conclusive, and a court of equity has power to subject it to review, if it has been made, or, if not made, to cause it to be made.

ID.—MANAGING OWNER—FAILURE TO MAKE GENERAL AVERAGE LOSS AD-
JUSTMENT.—Where the managing owner of a vessel delays adjust-
ment of a general average loss, after dissolution of a partnership
in the use of a vessel, he cannot urge that a suit by minority owners
for an accounting is prematurely brought.

ID.—MANAGING OWNER—TERMINATION OF AUTHORITY.—After a vessel
is libeled the managing owner is without authority to bind min-
ority owners for subsequent costs, disbursements, and expenses.

ID.—MANAGING OWNER — COMPENSATION FOR SERVICES.—A managing
owner is presumed to have no right to compensation for his own
services.

ID.—MANAGING OWNER—MINORITY OWNERS—PARTNERSHIP—ACCOUNT
STATED.—An account rendered by a managing owner of a vessel to
the minority owners for his services does not become an account
stated by either action or nonaction on their part, since between
partners no account can be taken *at law.*

ID.—COMPENSATION OF ADJUSTER EMPLOYED BY MANAGING OWNER.—In
an action by minority part owners of a vessel against a managing
owner, an item for compensation of an adjuster, employed by the
managing owner, for his services in adjusting insurance on the
freight earnings of the vessel, is properly employed where it appears
that the insurance fund was collected and that the minority owners
accepted their portion of it without protest.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. Marcel E. Cerf and
E. P. Shortall, Judges.

The facts are stated in the opinion of the court.

C. H. Sooy, and F. R. Wall, for Appellants.

Henry A. Jacobs, for Respondent.

HENSHAW, J.—This is an action in equity by the minor-
ity owners of the American schooner "Wm. F. Garms"
against defendant corporation, the majority owner and the
managing owner, for an accounting touching their respective
partnership interests in the use and operation of the vessel.
It had made two voyages. Its third projected voyage was
from Puget Sound to Santa Rosalia, Mexico. When a few
days out from its domestic port it encountered heavy weather,
was disabled, and was towed back to a Puget Sound port by
the Puget Sound Tugboat Company. Shortly thereafter this

last company libeled the vessel and her cargo for salvage, and by a second libel for towage. From neither of these libels was she released. Default was entered in the libel for towage and the vessel was sold for five thousand eight hundred dollars, the money being paid over to the United States marshal. At this sale the defendant, managing owner, bought the vessel. None of the minority owners appeared in either of the cases, nor has any of them since reacquired any ownership in the vessel thus sold. In addition to the five thousand eight hundred dollars arising from the sale of the vessel, three thousand dollars was paid into court by the owners of the cargo in the libel against the vessel and its cargo for salvage. Payments were made out of this eight thousand eight hundred dollars amounting to $4,376.48. The balance was sent to San Francisco and delivered to W. T. Cleverdon, named by respondent as adjuster, one thousand seven hundred dollars of this balance having been paid to the cargo owners. The three thousand dollars paid for salvage was received by the Puget Sound Tugboat Company in full satisfaction for salving both the vessel and her cargo. The admiralty court made no determination of the amount that the cargo should pay to discharge the lien against it for salvage, nor the amount that the vessel should pay to discharge the lien against it. There has thus been no determination of the amount in value of the lien against the vessel for salvage or of the amount in value of the lien against the cargo. The adjuster, Mr. Cleverdon, testified: "I presume the average adjuster is going to adjust the salvage and ascertain the proportion of it that the cargo will have to pay and the proportion that the vessel will have to pay. I certainly presume that I am going to do that." The one thousand seven hundred dollars paid over to the cargo owners was not authorized by the plaintiffs or any of them. Defendant, the managing owner, employed Mr. Cleverdon to estimate the general average loss and to make due and proportionate adjustment of it. This general average loss and adjustment had not been made at the time of the sale of the vessel and has not yet been made. Many items of expense involving charges against these plaintiffs' interests in the vessel and in its use remain to be settled. On June 3, 1915, according to the defendant, the general average statement was being prepared. When this cause came on for trial in December, 1914,

it had not been prepared. In the matter of voyages numbered 1 and 2 above adverted to, which voyages had been completed, the defendant charged sums for managing the business of the voyages. Without further elaboration the foregoing, for the purposes of the consideration to be had, presents with sufficient accuracy the situation when plaintiffs brought to trial their equitable action for an accounting of all these matters. The learned judge, in his opinion, declared the indubitable proposition that the managing owner has power to adjust general averages, but further laid down the proposition that "the co-owners are bound by the adjustment. They are bound by all of its elements, even the alleged erroneous inclusion of the claim for salvage." Further, that the minority owners must await the general average adjustment, and with further discussion as to certain items of insurance and items of the charges of the managing owner for compensation in managing the voyages, the court concluded, "That there are not now in the hands of the managing owner any funds respecting which the plaintiffs are entitled to an accounting," and it gave judgment for defendant for costs.

The status of these parties litigant is, of course, well settled. They were cotenants in the ship. They were partners in the use of the vessel. As part owners they were tenants in common and not partners. (Freeman on Cotenancy, sec. 379; *The New Orleans,* 106 U. S. 13, [27 L. Ed. 96, 1 Sup. Ct. Rep. 90].) Their partnership extended only to the use of the vessel and not to its ownership. (*Hendy* v. *March,* 75 Cal. 569, [17 Pac. 702]; Civ. Code, sec. 2396.) The proposition that upon the dissolution of a partnership an accounting may be had in equity at the instance of any surviving partner or of the representatives of a deceased partner is so fundamental as to require no citation of authority. The proposition is argued by respondent that this partnership still continues, undissolved. Indeed, respondent must maintain this position to uphold the judgment of the court. But from the nature of the thing itself this cannot be. Such a limited partnership going only to the employment of the vessel itself of necessity must terminate when the vessel is lost or sold, and so all of the adjudications hold. (Abbott's Merchant Ships, 14th ed., 145; Am. & Eng. Ency. of Law, 2d ed., pp. 880, 881; Watson on Law of Partnership, pp. 139,

142; *Mumford* v. *Nicoll,* 20 Johns. (N. Y.) 635.) For many purposes the employment of the vessel upon each voyage is regarded as a special partnership which ends on the termination of the voyage. It is not necessary to enter with elaboration upon this. Suffice it to cite *Smith* v. *Butler,* 164 Mass. 37, [41 N. E. 60], and *McLauthlin* v. *Smith,* 166 Mass. 131, [44 N. E. 125]. It is immaterial to the present consideration how this partnership may be regarded, since plaintiffs are seeking no legal relief, but equitable relief growing out of all the transactions of the partnership.

The partnership thus unquestionably having been dissolved, the right to an accounting is established *prima facie* by this fact alone. (30 Cyc. 712.)

Seemingly the learned trial judge entertained the view that as it was within the power of the managing owner to make the general average loss adjustment, and as the minority owners in this partnership would be bound by that adjustment, and as that adjustment had not in fact been made, these minority owners and partners had prematurely sought the assistance of equity. If such in truth was his position he was in error. No such finality attaches to such general average loss adjustments, and the fact that it has not been completed by the managing owner does not debar equity from calling for its completion and settlement under its own eye, and not only the right but the duty of equity to do this precise thing became fixed upon the dissolution of the partnership by the sale of the vessel. Says Story, speaking of general average adjustments: "A court of equity having the authority to bring all of the parties before it and to refer the whole matter to a master to take an account and to adjust the whole apportionment at once, affords a safe, convenient and expeditious remedy." (1 Story's Equity Jurisprudence, 13th ed., 491.) If an adjustment be made without the aid of a court of equity, it is not conclusive. "The adjustment is not conclusive. The facts are open to inquiry." (*The Santa Anna Maria,* 49 Fed. 878; *The Alpin,* 23 Fed. 819; *The Niagara,* 9 How. (U. S.) 9, [16 L Ed. 41].) In the *Star of Hope,* 9 Wall. (U. S.), 203, [19 L. Ed. 638], the court made the average adjustment, and on appeal the court's right and power to do this was upheld, the supreme court of the United States pointing out merely the law to be applied in making an average adjustment. (See, also, *Minor* v. *Commercial Union*

*Ins. Co.*, 58 Fed. 801.)   In brief, sections 2152 to 2154 of our Civil Code provide how the average loss is to be adjusted. The managing owner has the power to make or cause this adjustment to be made.   If the adjustment so made be conformable to the law, it is valid.   Otherwise it may be questioned.   If at the time that the aid of a court of equity is sought this adjustment has been made, then equity will take up the matter upon the basis of the adjustment so made.   If it has not been made, then, as has been shown, it is quite within the power and province of equity to order the adjustment to be made and to subject it to equitable review.   But it does not lie in the mouth of the managing owner after the termination of the partnership to urge that the minority partners have prematurely sought the aid of equity because he has delayed making such adjustment.   (*Backus* v. *Coyne,* 35 Mich. 5.)

Of course it is well settled that after the vessel was libeled the managing owner was without authority to bind these plaintiffs for subsequent costs, disbursements, and expenses. If they were properly incurred, of course, these plaintiffs must bear their proportion thereof.   Otherwise the managing owner was but a volunteer.   (*Reed* v. *Bachelder,* 34 Me. 205; *The Augustine Kobbe,* 37 Fed. 702; *The Esteban de Antunano,* 31 Fed. 924; *Williams* v. *Suffolk Ins. Co.,* 3 Sumn. 510, [Fed. Cas. No. 17,739]; *The Joseph Farwell,* 31 Fed. 844; Civ. Code, sec. 2155.)

Our law denies a partner the right to compensation for services rendered by him to the partnership (Civ. Code, sec. 2413), and declares that "a managing owner is presumed to have no right to compensation for his own services."   (Civ. Code, sec. 2072.)   The trial court allowed the items of compensation to defendant for voyages 1 and 2.   It very properly refused to do so upon evidence of *custom* to this effect, but concluded that the charge made by the managing owner for these services and presented to these plaintiffs in accounts rendered, in view of the nonaction of these plaintiffs, bound them as by an account stated.   But an inspection of these accounts and of the testimony supporting them shows that they were not, and were not meant to be, final, but by their very terms were subject to later modification and adjustment. Moreover, the principle governing the determination as to

CLXXVI Cal.—42

whether or not an account has been stated is necessarily different when the controversy is between partners from what it is when the parties to it stand at arm's-length. An this is very well pointed out in *Hinton* v. *Law,* 10 Mo. 701, where it is said: ''No principle is better settled than that between partners no account can be taken at law. The rule has its origin in the principle that before an action can be brought for any particular item, the partnership accounts must be taken, with a view to ascertain whether that item has been affected in any, and in what, degree, by the intermediate gains or losses of the partnership business.'' That the action or nonaction of plaintiffs in the matter of these accounts did not bind them as to an account stated is in full accord with our authorities. (*Ross* v. *Cornell,* 45 Cal. 136; *Fisher* v. *Sweet,* 67 Cal. 228, [7 Pac. 657]; *Dukes* v. *Kellogg,* 127 Cal. 563, [60 Pac. 44].)

The last item allowed by the court, whose allowance is criticised by these appellants, is a payment to adjuster Cleverdon of $405 as compensation for his services in adjusting the insurance on the freight earnings. For several reasons, however, this item was properly allowed. Mr. Cleverdon was employed for this purpose by the managing owner in the interest of all of the partners before the sale or even the libel of the vessel. The insurance fund was in its nature a partnership asset, and even if it be said that the respondent was without authority to procure the insurance in the first instance, yet when the fund was collected and these plaintiffs accepted their portions of it without protest, they should not in equity be heard to complain.

It is finally urged by respondent that the trial court did not refuse to state the account between these parties and wind up the affairs of the partnership, but, to the contrary, that the court did in terms take and make an accounting, and declared that the defendant had accounted to each and all of the owners of the schooner for all moneys received, both as managing owner and as partner.

But it is apparent from what has been said and from the quotations from the court's decision that after passing upon a few questioned items it in effect refused to enter upon a general accounting and settlement of the partnership affairs, upon the ground that the plaintiffs were not entitled thereto.

For which reasons the judgment appealed from is reversed
and the cause remanded for such further proceedings as may
be meet in equity.

Melvin, J., and Lorigan, J., concurred.