[Civ. No. 12933.   First Dist., Div. Two.   Feb. 25, 1946.]

HELEN DAVIS, Individually and as Administratrix etc., Appellant, v. CALIFORNIA MOTORS (a Partnership) et al., Respondents.

Walter S. Stevenson and Morgan V. Spicer for Appellant.

James R. Agee and Leonard J. Meltzer for Respondents.

GOODELL, J.—This is an appeal from a judgment in favor of the defendants for their costs in a suit for a declaratory judgment and an accounting, and from an order denying a new trial.

In 1939 the respondents Harry C. Falkell and Robert A. Baxter as copartners were engaged in a used car business in San Francisco under the name California Motors. On November 10, 1939, John A. Davis came into this business upon his payment of $225 for a fractional interest therein. The used cars on hand were not moving satisfactorily and it was decided by the three to change their base to Martinez. On January 31, 1940, they acquired the Ford sales agency at that place and on that day a bill of sale was made by Alhambra Motors, Incorporated, to Motor Credit Company, a California corporation, of that agency and all that went with it. To acquire the Martinez business a little over $10,000 was needed and that capital was advanced by said Motor Credit Company, a finance company which for some time had been run by Falkell and Baxter, who were its only stockholders.

Falkell, Baxter and Davis commenced at once to run the business and moved to Martinez the used cars which had been their stock in trade in San Francisco and sold them off in the regular course of business.

The court found that in January, 1940, the three men entered into a joint venture to purchase and operate the Martinez business under an oral agreement that each was to devote his entire time and effort to it; that Falkell was to draw $225 a month, Davis $225 a month and Baxter $200 a month. With respect to when and how profits were to be shared the court found: "That the capital needed by said joint venture

was to be furnished by defendants Motor Credit Co. and Harry C. Falkell; that all of the earnings of the said joint venture were to be used to liquidate, pay and return to defendants Harry C. Falkell and Motor Credit Co. such contributions and advances as were made by them to said joint venture; that after all outstanding indebtedness of said joint venture had been paid, including the said monthly withdrawals of the three joint venturers as aforesaid, and all said advances and contributions had been paid and returned to defendants Motor Credit Co. and Harry C. Falkell, then any surplus remaining was to be and become the property of said joint venturers, share and share alike.''

In May, 1940, they branched out and acquired the Studebaker sales agency at Vallejo under an oral agreement, so the court found, ''that the terms of their previous joint venture agreement would apply to and include said Studebaker Sales Agency.'' The money needed to acquire the Vallejo agency was likewise furnished by Motor Credit Company.

On October 12, 1940, Mr. Davis died. The appellant, his widow and administratrix, sought an accounting from Falkell and Baxter but without immediate results. She then invoked the provisions of section 613, Probate Code, and obtained from the Superior Court in San Francisco an order requiring them to account. Pursuant thereto they furnished her with a balance sheet of California Motors as of January 31, 1940; a balance sheet as of December 31, 1940, showing the consolidated operations at San Francisco, Martinez and Vallejo, and a consolidated profit and loss statement as of December 31, 1940. She was not satisfied with this as an accounting, and, alleging that this showing ''was and is inaccurate, untrue, and made for the purpose of deceiving and defrauding'' her, appellant filed this suit.

The court, instead of appointing a referee, as it might have done (Code Civ. Proc., § 639), proceeded (see *Berkowitz* v. *Kiener Co.*, 37 Cal.App.2d 419 [99 P.2d 578]) to go into the whole question. The trial lasted for three days, and twenty-four exhibits were introduced, mostly all dealing with the accounts, and with the financial condition of the business at all three places during the ten or eleven months while the decedent was a member of the enterprises, and after his death. The Martinez and Vallejo businesses were continued through 1942. The court's conclusion was that the plaintiff was ''not entitled to any relief under her said amended complaint.''

. It might be noted, incidentally, that a California corporation known as California Motors was formed in March, 1940, with its principal place of business in Contra Costa County, with Falkell, Baxter, Davis, Falkell's son and Falkell's attorney as directors, but no application was ever made for the issuance of stock. However, income tax returns were filed with the Franchise Tax Commissioner on behalf of "California Motors" for 1940, 1941 and 1942.

The court found that the decedent never "acquired any other or additional interest in said 'California Motors,' a co-partnership" (above his $225 investment) and that in January, 1940 (when the San Francisco business was terminated), "the assets of California Motors, . . . did not exceed its liabilities . . . that at said time said business did not have any value or worth over and above its liabilities." Appellant contends that there is no evidence whatever in the record to support this finding. The record discloses, however, that respondent Falkell testified that "what little money had been accumulated through profits in November and December, plus a good deal of the investment I had at that time" was lost before the business could be liquidated; that the automobiles unsold in San Francisco at the time of liquidation were moved to Martinez in an effort to sell them to pay off indebtedness still owing to the bank.

In *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 P. 1157], the court says that ". . . in examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion." (See, also, *Juchert* v. *California Water Service Co.,* 16 Cal. 2d 500, 503 [106 P.2d 886]; *Wescoatt* v. *Meeker,* 63 Cal.App. 2d 618, 625 [147 P.2d 41].)

Evidence relied upon by the appellant at the most shows that whatever assets remained upon liquidation of the San Francisco concern were transferred to the joint venture, and that the parties to that venture recognized Davis' original investment of $225 as a charge against it. Davis of course acquiesced in the transfer of whatever assets remained. Appellant pleaded that by agreement of the parties "the entire assets of the said California Motors was to be used as capital investment of the said joint venture." It is true that the

cars which were moved from San Francisco to Martinez became part of the stock in trade there, and were absorbed into that new business, but the fact remains that to acquire the Martinez business fresh capital in a sum upwards of $10,000 was required, and it was all furnished by Motor Credit Company, and none of it was furnished by the decedent. The $10,000 plus, so furnished, had to be repaid before the decedent could participate in any profits. That fact must always be borne in mind.

■ The court found that at the time of decedent's death there was no surplus belonging to the joint venture under the terms of the oral agreement. The appellant claims that there is no evidence to support this finding. It is supported by Falkell's testimony that on October 12, 1940, there was no net profit, and by plaintiff's Exhibit 16, a statement of consolidated operation and balance sheet as of December 31, 1940, which shows a "loss-to-date" of $878.84. No objection is made, and none can be made, to the court's finding that *none of the moneys advanced to acquire the Martinez and Vallejo agencies had been repaid,* and the latter finding itself lends further support to the finding objected to.

■ Appellant relies upon the amended return filed with the Franchise Tax Commissioner in 1940 showing net income for the year in the sum of $3,822.94. Respondent Falkell's explanation of this apparent contradiction of his testimony apparently satisfied the trial court, which resolved whatever conflicts there were, in respondents' favor. "Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the finding." (*Bancroft-Whitney Co.* v. *McHugh, supra.*)

In addition to suing generally for an accounting the appellant alleged that at the time of her husband's death $214 remained owing to him as salary. This was denied. The court found that no salary was owing. Ledger sheets of Davis' account from April 5 to October 12, 1940, were introduced in evidence. In addition to credits this account showed various payments made on Davis' behalf, and other charges against him. There is testimony in the record that a hospital bill of his was paid out of firm money during his last illness and that insurance premiums were likewise paid for him. The debits came to $438.25, exceeding whatever credit he had for salary. Appellant now claims that this offset should not have been allowed without it having been pleaded. ■ It

must be remembered that this was not an action for a certain sum of money, wherein an offset would have to be pleaded; it was a suit for an accounting and in such a case the court would certainly have the power, and it would be its duty, to take into account both sides of the ledger. It was simply a case of the debits exceeding the credits. That being so it is unnecessary to discuss the cases cited by appellant on the subject of pleading offsets.

One of appellant's exhibits was a statement of consolidated operations and balance sheet as of December 31, 1940. It contained nine items under which the total appeared as $10-217.33, which was incorrect; they actually totalled $8,778.87. During the course of the trial the missing item $1,433.96 [$1438.46?] was written in, which made the original total correct. The court accepted the explanation of respondent Falkell and his attorney that it was a mere clerical error of the typist in overlooking this omitted item. It appears, also, from the record that appellant's counsel knew of this inadvertence some time before the trial and could not, therefore, have been taken by surprise. ■ Appellant contends that the trial court erred in permitting the insertion of this additional item. An alteration to correct a written instrument is an immaterial alteration (1 Cal.Jur. 1072, § 7), and if sufficiently explained, the instrument is admissible in evidence. (*Le Franc* v. *Hewitt*, 7 Cal. 186; *Brooks* v. *Calderwood*, 34 Cal. 563, 567.)

■ The appellant claims that the court "erred in not ordering an accounting as prayed for." There can be no doubt that the representative of a deceased party to a joint venture has a right to an accounting on dissolution. The cases cited by appellant so hold (*Cottle* v. *Leitch*, 35 Cal. 434; *Gardner* v. *Smith*, 211 Cal. 350 [295 P. 36]; *Ferem* v. *Olson & Mahony*, 176 Cal. 652 [169 P. 386]; Civ. Code, § 2416; Prob. Code, § 571). ■ It is also true that in the absence of a reference, a mere statement of the balance due in the findings of the court is not a proper disposition of the action. (*Whann* v. *Doell*, 192 Cal. 680 [221 P. 899].) "On the other hand, the contention that an account must be stated in accepted bookkeeping fashion cannot be maintained. . . . *Any procedure or record from which it can be intelligently ascertained what the issues were as to the controverted items and how these issues were disposed of* by the trial court will suffice for the purpose, whether the matter appears from the findings, the

decree or a bill of exceptions, showing the controversy, and the disposition thereof. . . ." (*Whann* v. *Doell, supra,* 684, emphasis added; *Margolis* v. *Leonard & Holt,* 94 Cal.App. 716 [271 P. 758]; *Sears* v. *Rule,* 27 Cal.2d 131, 149 [163 P.2d 443]; 14 Cal.Jur. 769.) The record in the instant case in our opinion complies with the requirements of *Whann* v. *Doell, supra.*

The primary problem with which the court was confronted was to determine whether or not during the comparatively short duration of this venture its net earnings were such as to yield the decedent any profit. In the first place, his financial contribution was $225 and no more. Secondly, the capital for the Martinez and Vallejo ventures, amounting to over $10,000, all advanced by Motor Credit Company, and other indebtedness (the record shows that Mrs. Falkell also lent the firm money) had to be first repaid before *anybody* was entitled to share in the profits. That the trial judge was mindful of this appears from the following colloquy: "Mr. Stevenson: Yes. . . . It is my theory of the case that he had a one-third interest in a substantial profit at the time of his death on October 12, 1940. The Court: That is, after those advances were paid. Mr. Stevenson: Yes." The court found, as above stated, that the $10,000, plus, never was paid back. ▮▮▮ Regardless of bookkeeping entries indicating that the business at one time or another was making money, the fact remains that before the decedent could, under the agreement found by the court on uncontradicted evidence, participate in any profits or surplus, this comparatively large amount, which was the very capital of the business, had to be repaid. The court's findings that there was no such surplus, and that the $10,000, plus, never was repaid, are amply supported by the record. In reaching this conclusion the court had before it, in addition to the oral testimony, various financial statements prepared from the books and tax returns, and delved into the entire matter with painstaking care. The record shows this. It must be remembered, also, that before this litigation was started the appellant had in hand the three exhibits already described which enabled her and her counsel to prepare for the trial of this case. In our opinion the appellant had in the trial court, the accounting for which she prayed. We are satisfied, moreover, that the court's conclusion was correct. The fact that the conclusion of law says "that plaintiff is not entitled to any relief" after a three-day trial in which the

accounts were thoroughly gone into can only mean that, after a full hearing and accounting, she is not entitled to recover any money judgment from the respondents.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied March 27, 1946, and appellant's petition for a hearing by the Supreme Court was denied April 25, 1946.