[Civ. No. 6334.   Third Appellate District.—February 21, 1940.]

WILLIAM B. BERKOWITZ et al., Respondents, v. THE KIENER COMPANY (a Corporation) et al., Appellants.

Pacht, Pelton, Warne & Black and Alfred P. Chamie for Appellants.

Eugene L. Wolver for Respondents.

SCHOTTKY, J., *pro tem.*—Plaintiffs sued to recover moneys alleged to be due to them and defendant Elliott M. Bank from defendants, The Kiener Company and Harry Kiener, for commissions due under the terms of a written contract entered into between the defendant, The Kiener Company, and plaintiffs, and defendant, Elliott M. Bank, while doing business under the fictitious name of Sutton & Co. and also on an oral contract between the defendant, The Kiener Company, and plaintiffs, while plaintiffs were doing business under the name of Berkowitz Brothers.

Plaintiffs sought recovery upon the common counts of money had and received and money due upon contract in the first and second causes of action; and in the third cause of action plaintiffs made a demand for an accounting, and in the fourth cause of action plaintiffs sought further recovery from defendants, The Kiener Company and Harry Kiener, upon the ground that said defendants had made certain contracts of purchase secured by plaintiffs impossible of performance.

The defendants, The Kiener Company and Harry Kiener, denied the material allegations of the complaint, and the defendants, Elliott M. Bank, who was joined as defendant, with the allegation that he was so joined because he would not join as plaintiff, filed an answer alleging his willingness to join with plaintiffs in said action, and at the trial said defendant, Elliott M. Bank, joined with plaintiffs in prosecuting said action.

The trial court found that plaintiffs and defendant, Elliott M. Bank, doing business as Sutton & Co., were entitled to judgment against defendant, The Kiener Company, in the sum of $9,687.80, less a set-off of $5,040.94, to which said defendant was entitled, leaving a balance of $4,646.86; and the court further found that there was due from the defendant, The Kiener Company, to plaintiffs, doing business as Berkowitz Brothers, the further sum of $2,210.90, less a set-off of $79.15, leaving a balance of $2,131.75. Judgment followed in accordance with said findings, and this appeal is from said judgment.

A summary of the facts as shown by the evidence and found by the court are as follows:

On the 1st day of June, 1928, the plaintiffs and the defendant, Elliott M. Bank, copartners doing business under

the name of Sutton & Co., entered into a written agreement, whereby Sutton & Co. were to sell exclusively certain lots owned by the Big Bear Land & Water Co., for which company the defendant, The Kiener Company, was the exclusive agent. Under the terms of the agreement, Sutton & Co. was to receive the first 40 per cent of a list price, The Kiener Company the next 60 per cent, and all moneys above the list price were to be paid to Sutton & Co. Where the sale price of the contract was less than the list price, the computations of commissions were to be based upon the sales price. Sutton & Co. commenced operations under said agreement, and through its members and agents made certain contracts.

On September 21, 1928, the agreement of June 1, 1928, was terminated by written cancellation of agreement wherein it was provided that the liability of defendant, The Kiener Company, to make the payments of money and commissions earned by Sutton & Co. under the terms of the former agreement, would thereafter continue. At the same time a written dissolution of agreement was entered into, wherein the copartnership theretofore existing between plaintiffs and defendant, Elliott M. Bank, was terminated, and the accounts receivable were assigned to the defendant, Harry Kiener, as trustee, for the purpose of paying the salesmen's commissions and accounts payable, and allocating the balance between the plaintiffs and defendant, Elliott M. Bank. This instrument was prepared, as were all others, by the attorney for defendants.

Immediately after the dissolution, the plaintiffs and the defendant, The Kiener Company, entered into an oral agreement, which said defendant agreed to reduce to writing, upon the same terms and conditions as the prior agreement of June 1, 1928, and plaintiffs as copartners under the name of Berkowitz Bros., thereafter through themselves and their salesmen, made additional contracts. Subsequently, and about December 15, 1928, plaintiffs discontinued operations, and instructed defendants to pay their salesmen out of the contingent commissions. Such a similar prior instruction had been made in regard to the salesmen of Sutton & Co.

After the discontinuance of the activities of Berkowitz Brothers the defendant, The Keiner Company, through its salesmen and agents, solicited various of the vendees under the contracts, while said vendees were not in default upon

said contracts, to purchase lands other than that contained in their respective contracts, and agreed with said various vendees that if said vendees purchased other lands The Kiener Company would cancel the then existing contracts obtained by plaintiffs and defendant, Elliott M. Bank, and allow full credit on the new contracts for all payments made under the prior contract. Pursuant to such agreement various of said contracts were canceled, and new contracts entered into by said vendees with The Kiener Company. The trial court found that these transfers were made by The Kiener Company through its agents, for the purpose of depriving plaintiffs and defendant, Elliott M. Bank, doing business as Sutton & Co., and plaintiffs, doing business as Berkowitz Brothers, of the commissions, including overage, that would become due to them upon the payment of the further instalments of the purchase price, and that the defendants thereby made impossible and prevented the further performance of said various contracts, and that plaintiffs and defendant, Elliott M. Bank, doing business as Sutton & Co. and plaintiffs, doing business as Berkowitz Bros. were respectively entitled to $3,084.35 and $1,085, because of the switching and transferring of said contracts obtained by them. The court found that said plaintiffs and Elliott M. Bank were entitled to further sums totaling the amounts for which judgment was rendered.

Appellants set forth in their opening brief four points upon which their appeal is based. These are: 1. The evidence is insufficient to support the basic findings relating to the accounting made by the court of the amounts due to plaintiff and defendant Elliott M. Bank by The Kiener Company. 2. The court erred in arbitrarily dividing the accounting period. 3. The court erred in not referring the account problem to a qualified accountant. 4. The court erred in refusing to grant defendant's motion for a new trial on an accounting.

In support of their first point, appellants devote some fifty pages of their opening brief to an attack on twelve separate findings of the trial court. In order to properly understand and fully consider the contentions of appellants, we have carefully read the reporter's transcript, consisting of 789 pages, the clerk's transcript, consisting of 145 pages, and some 50 exhibits, and we cannot refrain from stating that in view of the fact that the principal contention of appel-

lants is that the evidence does not support the findings of the trial court, an appellate tribunal should not be burdened with the task of reviewing such a record when it appears as clearly as it does in this case that there is substantial conflict in the evidence.

It would serve no useful purpose to discuss the attack of appellants on each of the twelve findings attacked by them. We will, however, discuss their first contention that finding XI, wherein the trial court found that the transfers referred to were made by defendants "for the purpose of depriving the plaintiffs and the defendant Elliott M. Bank, doing business as Sutton & Co., and the plaintiffs, doing business as Berkowitz Bros., respectively, of their respective commissions, including overage, that would thereafter become due to them upon the payment of the contingent instalments of the unpaid purchase price of said various respective contracts of said various vendees" is not supported by the evidence, as fairly illustrative of the force of the argument of appellants as to the insufficiency of the evidence to support the finding attacked by them.

In support of such contention, appellants quote the testimony of Harry Kiener, president of The Kiener Company, in which said defendant denied that The Kiener Company ever participated in or caused any cancellation or reloads to be made of any contracts originally procured by Sutton & Co. and by Berkowitz Bros. for the purpose of terminating and defeating the claims of plaintiffs and Elliott M. Bank. Appellants assert that this testimony of Harry Kiener is uncontradicted and state that "there is absolutely no evidence in the record to the effect that the transfer upon any of the related contracts was made for the purpose stated in the above Finding".

It appears from the record that the contracts, the performance of which the court found was made impossible by defendants, at the time they were transferred, were not in default, were transferred at the solicitation of employees of defendants, and that full credit was allowed on the new contracts for all payments made on the prior contracts. It appeared further that this was done in so many instances that it was only reasonable to infer that it was done as a part of a premeditated plan. Numerous witnesses testified as to the statements and promises made to them by The Kiener Com-

pany's salesmen in their efforts to switch the purchasers from the old contracts to new contracts for other property, and the findings of the trial court that such conduct of the agents of said defendant was for the purpose of depriving respondents of their respective commissions is amply supported by the evidence.

We will not discuss the attack of appellants upon Findings XII, XIII, XIV, XV, XXI, XXXIII, XXXIV, XXXVI, XXXIX, XLII, LI, because we are convinced from our review of the record that the evidence amply sustains such findings. ■ "In examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might have reasonably been thought by the trial court to lead to the same conclusion." (*Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157].)

■ The second point urged by appellants is that the trial court erred in arbitrarily dividing the accounting period, and in commencing its account as of September 21, 1928. Plaintiffs' complaint contained in addition to the causes of action for an accounting, causes of action for money had and received. The court found in finding XVII "that on the date of the dissolution of Sutton & Co., to-wit, September 21, 1928, the plaintiffs and defendant Elliott M. Bank, had been paid in full for all commissions, including overage, then due them", and the court then proceeded to determine by the accounting what sums became due thereafter. Certainly appellants could not be injured by a finding that they had paid plaintiffs and defendant Elliott M. Bank in full up to September 21, 1928, and there could be nothing arbitrary in the action of the trial court in so dividing the accounting period, particularly in view of the fact that such finding XVII is not attacked by appellants.

■ Appellants in their oral argument seemed to rely chiefly upon the third point in their opening brief, which is that "the court erred in not referring the accounting problem to a qualified accountant". Appellants assert upon this point: "The present accounting is exceedingly complicated and involved. It was error for the court, at the time of the trial, to have refused defendants' application to send the matter to an accountant for an independent audit."

Section 639 of our Code of Civil Procedure provides that the trial court in certain cases may appoint a referee for the taking of an accounting, but there is nothing in said section, or in any decision of our appellate courts, which makes it mandatory for the court to order such reference. Appellants cite some cases from other jurisdictions which seem to hold that it was error in certain cases for a court to deny a reference, but these cases are clearly against the weight of authority. The true rule is clearly set forth in 10 Ruling Case Law at page 510, as follows:

"Inasmuch as references are ordered merely as an aid and assistance to the court, a reference is not necessary and may be dispensed with in any case where the court can get along well enough without it. Ordering a reference is therefore a matter of discretion. A reference will not be ordered even in a matter of account where the transaction to be considered is short and in no respect complex, and it is ordinarily within the discretion of the court, if for any reason it deems it proper to do so, to state the account itself, after an examination of the testimony. Questions fit for reference will be determined by the court itself without a reference, whenever it can conveniently do so, to the saving of time and expense."

That this is the rule in California is shown by the following cases: *Emery* v. *Mason,* 75 Cal. 222 [16 Pac. 894]; *Fox* v. *Hall,* 164 Cal. 287 [128 Pac. 749]; *Putman* v. *Superior Court,* 209 Cal. 223 [286 Pac. 425].

We conclude, therefore, that it was a matter entirely within the discretion of the trial court to determine whether it was necessary to refer the accounting to an accountant, and that there was no error in refusing to grant appellants' request for such reference. The trial court may well have concluded from the evidence in this case that reference to an accountant would not help the court in a correct determination of the issues involved.

■ There is no merit in appellants' final contention that the trial court erred in denying appellants' motion for a new trial. Appellants admit that the report of Rothman & Rothman, certified public accountants, which was attached to the affidavit of Harry Kiener, filed in support of defendants' motion for a new trial, was newly-discovered evidence which showed the finding of the trial court to be in error. We do not see how such a report could be considered newly-

discovered evidence, but even if it should be so considered, we cannot see that the trial court abused its discretion in denying appellants' motion for a new trial.

It is axiomatic that new trials on the ground of newly-discovered evidence are not favored, and it is also true that even where the showing is apparently a strong one, much depends upon the sound discretion of the trial judge. (*United States* v. *Meldrum,* 146 Fed. 390, 392; *Estate of Bainbridge,* 169 Cal. 166 [146 Pac. 427]; *Spiers* v. *Spiers,* 176 Cal. 557 [169 Pac. 73]; 1 Spelling's New Trial and Appellate Practice, 409; 4 Cor. Jur. 833.) It is also required that the new evidence upon which a new trial is sought must be evidence that is new and not cumulative, or solely of an impeaching character. Likewise it is true that a new trial would not be warranted on this ground where it is made to appear that a different judgment would not necessarily result from the new evidence if presented.

And, lastly, and perhaps most important in order to warrant the granting of a new trial on this ground, it must appear that the evidence thus offered is evidence that could not, with reasonable diligence, have been obtainable at the trial. (*People* v. *Byrne,* 160 Cal. 217 [116 Pac. 521]; *Fresno Estate Co.* v. *Fiske,* 172 Cal. 583 [157 Pac. 1127]; *Arnold* v. *Skaggs,* 35 Cal. 684, 688; *Taber* v. *Beske,* 182 Cal. 214 [187 Pac. 746]; *Lawrence* v. *Pickwick Stages,* 68 Cal. App. 494 [229 Pac. 885]; *Monnette* v. *Title Ins. etc. Co.,* 107 Cal. App. 313, 324 [290 Pac. 668].)

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 22, 1940, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 18, 1940.