[Civ. No. 20503.   Second Dist., Div. Two.   Apr. 28, 1955.]

IDEAL PACKING COMPANY (a Corporation), Plaintiff and Appellant, v. LUCILLE G. BRICE et al., Respondents; SOL BELINKY, Cross-Defendant and Appellant.

Minter & Feder, Rosenthal & Norton, Jerome B. Rosenthal and Lawrence William Steinberg for Appellants.

Mason & Howard and Paul P. Selvin for Respondents.

MOORE, P. J.—Appeal by plaintiffs from a judgment in an action for accounting wherein defendants prevailed on their cross-complaint. Reversal is demanded on (1) inadequacy of the findings; (2) error in dividing the accounting period; (3) court's failure to employ the profit determining method required by the contract; (4) insufficiency of the evidence; (5) failure to find upon substantial credits and to award same to plaintiff.

On June 19, 1950, respondents were owners of the J Bar L Ranch (140 acres), and its equipment. On that day they effected a transaction with plaintiff as follows: (1) respondents leased the ranch to appellants for the period to terminate September 13, 1951, to be used for feeding cattle and growing crops; (2) respondents were employed to operate the ranch for which they should receive $200 per month, have their home on the ranch and receive a bonus of 40 per cent of the net profits gained from the operations, payable 30 days after the completion of a statement of the accounting, but in no event later than 75 days after September 13, 1951; (3) an accounting was to be taken for the purpose of computing the bonus as soon as practicable after the September date; (4) Belinky (officer of and assigner to Ideal Packing Co.) loaned to respondents $24,000 evidenced by their note and secured by a trust deed on the J Bar L Ranch; (5) they orally agreed to commence operations under the contract June 19, 1950. At the expiration of the specified year, the parties orally agreed to extend the lease for an additional year, terminating September 12, 1952, on its identical terms and conditions.* But prior to the arrival of the day designated for the expiration of the extended period, they agreed further

---

*Finding "XII

"That prior to September 12, 1952, Ideal and the Brices orally agreed that said lease and employment contract should not be renewed for a third year, but that the operations of feeding, including pasturage of the cattle then remaining on the premises, should thereafter be com-

584

not to extend the term. By November 24, 1952, appellants had removed their bovine herd from the leased land.

At the end of the first year of operations, respondents demanded a computation of the profits and payment of their bonus. But neither calculation was done nor payment made. On the contrary, appellants attempted to prevent respondents from refinancing the loan when the note matured in order that appellants might acquire the J Bar L Ranch at a foreclosure sale. Such efforts on the part of appellants consisted of (1) their failure to keep correct accounts and to render an accounting to respondents of the profits earned by their operations; (2) their instituting this unfounded suit and their levy of a writ of attachment on the J Bar L Ranch,† thereby encumbering its title and rendering a refinancing difficult.

Appellants contend that the findings are inadequate in that they do not clearly show the basis of the court's judgment; that there is no means of telling how the court derived the amount found to be due respondents; that the report of a referee or a master is required to enable the reviewing court properly to adjudicate this appeal. However, no authority is cited to support such contention. The court found specifically "that an accounting of the operations of J-L Ranch was had in open Court; that said accounting showed a net profit for the first year period, June 19, 1950 to September 12, 1951, in the sum of $5,330.50." ██ An accounting made in open court fulfills any requirement for a referee's report. Respondents' Exhibit O gives in detail the figures of the accounting as made to the court. It shows the total net income for the first year to have been $5,263.64. The court computed that it was $5,330.50, $66.86 more than reported

pleted in accordance with the terms of said contract, and that such operations continued until November 24, 1952, when Ideal removed all of their cattle from the ranch and abandoned and terminated said contract."

†Finding "XIX

"That plaintiff and cross-defendants wrongfully engaged in a course of conduct intended to make it impossible for cross-complainants to pay the obligations secured by the deed of trust upon their property when the same became due, in order that cross-defendants might acquire the same under foreclosure proceedings, which wrongful conduct consisted of cross-defendants' failure to keep proper accounts and to render an accounting to cross-complainants of the profits of the business, as required by the terms of the employment contract, and the institution of an unfounded suit, as represented by the present action, accompanied by the imposition of a cloud upon defendants' title by virtue of the attachment issued therein with the intent thereby to prevent cross-complainants from refinancing their property by borrowing from others."

by respondents' accountant. The latter included an inventory of the cattle but not of the supplies for the first year. The court added $2100, the value of grain or hay, to the inventoried value of the cattle, making the total $7,363.64. Deducting therefrom the items of overpayment, taxes, salary and a harrow, totaling $2,033.14, leaves the sum of $5,330.50, the total net profit for the first year. Forty per cent of that total is $2,132.20—which is the sum due respondents for the first year. The testimony of respondents and their accountant is substantial evidence to support such findings. There is no halo about the head of the accountant of appellants that shines all the way to this court. To us he was just a witness of the human variety whom the trial court was especially authorized to evaluate. That court having studied and appraised all evidence introduced, its findings are the ultimate of the truth of the issues investigated. ▆ Where a trial court accepts the proof adduced by one expert and rejects that presented by another with reference to the issues of the same controversy, its consideration of the contention involves an inquiry into the credibility of the witnesses and the weight to be accorded their testimony which no appellate court will indulge. (*Hurley* v. *Behnke,* 212 Cal. 761, 762 [300 P. 820] ; *Berkowitz* v. *Kiener Co.,* 37 Cal.App.2d 419, 425 [99 P.2d 978].) In the Berkowitz case, the appellant made claims similar to those presented here : (1) The evidence is insufficient to support the accounting made by the court; (2) the court arbitrarily divided the accounting period; (3) the court did not refer the issue to a qualified accountant. The appellate court adhered to the fundamental law that it should not be burdened with the task of reviewing the evidence where there is a substantial conflict, but must accept as true all evidence tending to establish the correctness of the reasonable inference. Under the doctrine announced by the cited authorities, it is vain for an appellant to contend that the trial court ''did not give consideration'' to his evidence, or that the testimony of Kahn, respondents' accountant, ''is not entitled to any substantial evidentiary effect'' or that in taking the accounting in open court, the trial judge gave no ''special credence or weight to the net profit statement of Schwartz, the certified public accountant of the employer.'' That Kahn's statement was ''exaggerated and distorted'' was an argument to be addressed to the trial court. (*Kruckow* v. *Lesser,* 111 Cal.App.2d 198, 200 [244 P.2d 19] ; *Hoffman* v. *Gurnsey,* 44 Cal.App. 98 [185 P. 993].)

■ Appellants contend that they were prejudiced by the court's dividing the accounting period; that if the full term from June 19, 1950, to September 13, 1952, had been used, the accounting would have disclosed a loss; that as respondents did not seek a separate accounting for the first three months following June 19, 1950, or for the two distinct years that followed, by such behavior they fixed the term into one period. The court evidently followed the suggestion of appellants' Exhibit 5 which divided the lease-contract term into separate periods. Nevertheless, they now contend that there was one continuous lease for a three-year period and therefore there should be but one accounting period. But on the testimony of Mrs. Brice and the admissions of appellants that they had agreed to furnish an accounting for each separate period, the court adopted respondents' contention. Indeed, appellants' own Exhibit 5 entitled "Tentative Funds Advanced to Brice" is divided into separate periods. While there is some basis for appellants' insistence upon an agreement for a single term of the contract's subsistence, the court accepted the version espoused by respondents, and that settles it "so far as this court is concerned." (*Hoffman* v. *Gurnsey, supra.*)

Appellants insist that special value should have been accorded to the testimony of their accountant. Such a contention would be a novelty when applied to any person in any group of witnesses after the trial court has already evaluated the witnesses who had appeared before it. But this accountant himself said that his own audit was "tentative" to which he could not unqualifiedly certify. The court was at liberty to accept such substantial evidence as appeared most probable (*Berkowitz* v. *Kiener Co., supra,* 423) and in so doing conformed with established practice. Besides the testimony of the expert accountants, there was ample evidence to substantiate the findings as to the accuracy and competency of the accounting adopted by the court. The court did not derive its findings solely from the testimony of respondents' accountant, but considered and weighed all the evidence adduced. Because the testimony of such accountant did not fully cover every item, it should not, for that reason, be wholly swept aside as void and meaningless. But it was nevertheless to be considered as a factor for the solution of the issues. From the ultimate facts found, it is obvious that the court did not base its findings on the testimony of either accountant but upon all the proof adduced. The contention that certain proof was dis-

regarded is disproved by the adequate attempts of the court to cover the entire field and by its final figures.

Appellants contend that the court failed to find upon certain credits to which they are entitled, e. g.: a loan to Brice; overpayment for cattle purchased; canvases purchased by appellant but retained by Brice; excess payment for cattle and credit due for hay left on the ranch. Appellants contend that the total value of all such items is $3,358.25 and that by reason of the court's failure to find on such items, the judgment should be reversed. A finding on each of such items was not necessary. The ultimate fact to be found by the court was, first, whether any profit had been earned during the first year; second, the amount of such profit, and third, respondents' share. Those facts were determined as follows: total profit, $5,330.50; respondents' share (40 per cent), $2,132.20. Adding to the latter sum the amount due for maintenance and repairs: $954.95, makes $3,087.15, the judgment awarded to respondents. Findings upon each of the several items of an account would be calculated unduly to extend the area to be included in findings. The court heard all the witnesses and reached the determination as to the correctness of the claims of each party and the result was that the net earnings for the first period were $5,330.50. To make findings on the several credits to which appellants deem themselves entitled would be a finding of the evidence.

In addition to their criticisms of the lack of findings, appellants dislike the method by which respondents prove their account. An account is not required to be in any particular form. The requirement of any litigant is that he present the evidence of his claims in an orderly fashion. The question presented is a practical one: whether from the entire record, a miscarriage of justice appears? If it can be intelligently ascertained from the record, the findings, the decree or even a bill of exceptions showing the controversy and the disposition thereof, the appellate court will uphold findings in accounting cases. (*Whann* v. *Doell*, 192 Cal. 680, 684 [221 P. 899].)

The judgment is affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied May 26, 1955, and appellants' petition for a hearing by the Supreme Court was denied June 23, 1955. Schauer, J., was of the opinion that the petition should be granted.