365 P.2d 313 (1961)
William F. FOSTER, Ethel Foster, Laurence Spears, George Evans, Jr., Walter Parman and Margaret Parman, Appellants,
v.
BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Executor of the Estate of Silve G. Arata, deceased, Rita Gianelli, Executrix of the Estate of Joseph Gianelli, deceased, Dominic L. Battilana, individually and as directors and trustees of Tahoe Enterprises, Incorporated, a corporation, Tahoe Enterprises, Incorporated, a corporation, The Corporation Trust Company of Nevada, a corporation, First National Bank of Nevada, a corporation, Washoe Title Company, a corporation, Respondents.
No. 4358.
Supreme Court of Nevada.
October 4, 1961.
*314 Hutchinson & Quattrin and J. Albert Hutchinson, San Francisco, Cal., John E. Gabrielli, Reno, for appellants.
Guild, Busey & Guild, Reno, Mazzera, Snyder & DeMartini, Stockton, Cal., Leslie B. Gray, Reno, for Respondents.
BADT, Chief Justice.
This appeal is from a judgment entered upon a second trial by reason of this court's remand for a limited new trial of one issue. The original action was a derivative one by minority stockholders of Tahoe Enterprises, Incorporated, which operate a resort and gambling casino at Lake Tahoe, for an accounting and dissolution and distribution of the remaining corporate assets. In our disposition of the appeal from the first judgment, we affirmed the same in all respects except one. Foster v. Arata, 74 Nev. 143, 325 P.2d 759, 766. In this regard we said: "At the close of the 1950 season substantial *315 assets were in the hands of the defendants which they took over and disposed of arbitrarily. They had no lien upon these assets. The authorities justifying foreclosure of their mortgages under the conditions described have no bearing upon their seizure and disposition of these assets. An accounting must be had of such disposition." Our order in this respect was as follows:
"[T]he denial of an accounting for the disposition of assets not included in the mortgages is reversed and the cause remanded for a limited new trial of this item." On limited new trial the lower court approved the accounting given by defendants, which showed no balance owed by the defendants to the corporation. The plaintiffs appealed and have asserted error as follows:
1. That the trial court erred and abused its discretion in refusing to enter an interlocutory decree requiring the filing of an account.
2. That the court erred in permitting a retrial beyond the limited issue of the remand.
3. That the court erred in permitting trial and finding that defendants owned a "deficiency" or unsecured "credit" against the corporation; that despite the fact that this court's opinion on the first appeal had "closed the ledger on both sides" of all prior debits and credits, except those involved in the remand for limited new trial, the court had permitted a complete showing of all such prior matters; that by reason thereof the respondents had been unlawfully permitted to show their complete advances for the benefit of the corporation; that this included an advance of $150,000 evidenced by respondents' first mortgage, although such indebtedness had been extinguished by respondents' foreclosure of their second mortgage securing subsequent advances of $103,000; that it also included an indebtedness of $30,000 which had become "moribund" because the same had not been reserved in their first judgment; that even if these claims to credits had been procedurally reserved, they were not factually justified.
4. That the court erred in curtailing appellants' cross-examination of plaintiffs' witnesses.
5. That the findings are not supported by the evidence.
6. That it was error to permit the filing of "ex parte" findings.
7. That it was error and an abuse of discretion to deny appellants' motion for a new trial.
These assignments of error are not recited in the precise words used by the appellants, but are a proper description of the assignments as we see them. We deal with the assignments of error in the order asserted.
1. Appellants rely on NRCP Rule 53(d) (3)[1] to support their contention that it was error and an abuse of discretion for the court to refuse to make its interlocutory decree for an accounting. A reading of this rule indicates on its face that the refusal cannot be deemed an error, as the manner of permitting the submission of an account is made clearly discretionary. We see no abuse of discretion in denying the application for an interlocutory order or in overruling the objections of appellants to the presentation of the account under the method adopted by respondents, as hereafter described. The court itself considered the account and acted upon all objections thereto. Long before the adoption of NRCP (effective January 1, 1953) this *316 court said in State ex rel. Reinhart v. Callahan, 48 Nev. 265, 271, 229 P. 702, 703: "We have no statutory provision as to the method of procedure when it has been made to appear that an accounting should be ordered, but it seems that a court of equity has a wide discretion in this matter  it may refer a case to a referee in the first instance, or it may take the account itself, or it may, before making an order of reference or before taking the account itself, order that an account be rendered, duly verified." To like effect are Ideal Packing Co. v. Brice, 132 Cal. App.2d 582, 282 P.2d 957; Schefski v. Anker, 216 Cal. 624, 15 P.2d 744; Puim v. Callahan, 135 Cal. App.2d 70, 286 P.2d 526; Gibbs v. District Court, 86 Utah 314, 44 P.2d 504. Nor is the account objectionable because the accountant, a certified public accountant, compiled the same from the corporate books and records and as to whose accuracy he had no personal knowledge. Testimony as to the accuracy of the items was supplied by other witnesses. The assignment of error is without merit.
2. We find no prejudicial error in the admission of evidence of receipts and disbursements that may have included items beyond the precise limitation of the remand. Under the circumstances of the case there was bound to be some overlapping. Indeed, the parties seemed to contemplate this in both the direct and cross-examination of witnesses. In considering an exhibit that went into issues of the former trial, appellants stated: "We have no objection to receiving some of the evidence that went into the other trial, upon its being shown pertinent * * *." And in objecting to certain interrogatories and their answers, appellants made the objection, "because they refer only to the items in the Supreme Court opinion and nothing else whatever."[2] In the briefs on the present appeal we find innumerable references to and extended discussion of evidence of receipts and disbursements in the operations long before this court is said to have "closed the ledger" at the close of the season, September 30, 1950.
3. Appellants' next attack is against the recognition, in any judgment upon the accounting as a whole, of any indebtednesses of the corporation to the respondents prior to the foreclosure judgments. This would wipe out the $150,000 note secured by the first real mortgage from the corporation to the respondents by reason of respondents' foreclosure of the second mortgage, and would further wipe out an indebtedness of $30,000 from the corporation to the respondents. There are several reasons which prevent us from recognizing the validity of this assignment of error. Respondents cite several authorities, including the annotation at 95 A.L.R. 81 to the effect that the foreclosure of the junior mortgage extinguishes the personal obligation of the senior mortgage. An annotation at 39 A.L.R. 1486 states that there is a considerable difference of opinion on the subject. The principal case there annotated, Oklahoma State Bank of Enid v. Dotson, 109 Okla. 190, 235 P. 181, 183, 39 A.L.R. 1482, holds definitely that the foreclosure of the second mortgage did not extinguish the first mortgage, "for the reason that the junior mortgage foreclosed by plaintiff was subject to the senior mortgage * * *." It is not necessary for us here to resolve these conflicting authorities. It is recited in our opinion on the first appeal, 74 Nev. at page 156, 325 P.2d at page 766: "The findings of the district court that the sale by the defendants of the properties bought in at foreclosure ($125,000, subject to the deed of trust for $150,000, and $15,000 *317 for the chattel mortgaged property bought in) constituted the full cash value of said real and personal properties is substantially supported by the evidence." In the first place, if this was in issue on the first trial, it was there disposed of and is no part of any issues involved in our remand for a limited new trial. In the second place, a reference to the topical index to appellants' 90-page opening brief in the first appeal does not indicate that such contention was there made. The authorities cited in support of this contention were not cited in the first appeal. If, as appellants contend, the law of the case, except as to the purpose of the limited remand for further trial, established the law for the second trial and the present appeal, the question raised by this assignment of error is not now before us. All assignments of error on the appeal from the judgment in the first trial, all issues involved in appellants' derivative suit in the first trial were resolved in favor of the respondents, except the one issue to which the remand was limited. If the contention that the foreclosure of the second mortgage extinguished the first mortgage and all personal obligation to pay the first mortgage debt was available at all as a defense, it was available in the first trial. If so, it was adjudicated in the affirmance of the judgment in favor of defendants. We must also recall that this was a derivative action brought by appellants to establish an indebtedness of the respondents to the corporation. In such action all items of debits and credits between respondents and the corporation were cognizable. If the result of an accounting between such parties showed a balance in favor of respondents, and an action by the corporation against respondents would accordingly fail, the derivative suit must likewise fall. Nelson v. Sierra Construction Corp., 77 Nev. 334, 364 P.2d 402.
The same applies to the indebtedness of the corporation to the defendants in the sum of $30,000 for moneys advanced for the corporate business and which item appellants claim has now become "moribund." Further discussion of this assignment of error therefore becomes unnecessary. It would likewise be without purpose to discuss appellants' contention that there has been a procedural estoppel on the ground that respondents suffered the first judgment and its affirmance in the first appeal "without reserving such subject matter" and without themselves taking an appeal from the court's failure to preserve their rights. Our recital in affirming the first judgment that the total recovery of the defendants in the sum of $344,500 was exceeded by over $70,000 in their advances to and for the benefit of the corporation would seem to reinforce the conclusions above reached.
Up to the close of the 1949 season (about September 9, 1949) the books were kept by appellant Walter Parman. About that date he turned them over to appellants' accountants, Semenza & Kottinger, for auditing. The 1950 operation by respondents, and the books reflecting same, were audited by respondents' accountant Schofield. A comparison and analysis of the two do not show any serious disagreement as to sums owed respondents by the corporation. We still end up with a substantive balance in favor of respondents. The findings of the trial court were in agreement. The issue became a question of fact and in our opinion there was ample support for the trial court's findings. Under such situation this court will not interfere.
4. Appellants assign error in the trial court's curtailment of cross-examination by plaintiffs. The cross-examination halted by the court was that of the accountant. The cross-examination had already been extensive. It was halted after it appeared that the accountant witness had no personal knowledge of the amount of actual cash on hand on the close of operations September 4, 1950, and it appeared from statements of counsel that a witness would be produced who could testify to such facts of his own knowledge. Respondent Arata did subsequently testify thereto and was cross-examined at length as to cash on hand and in bank. As noted, the witness being cross-examined had no such personal knowledge. *318 He had not participated in the counting of the cash. Arata had. Under the circumstances, we do not see what could have been accomplished by further examination of the accountant concerning the matter inquired into.
5. Throughout their brief appellants complain bitterly of the "so-called" findings, of the "ex parte" findings, "self-serving" findings, "one-sided" proposals, of the fact that the defendants had drawn the findings and they had been signed by the court; that plaintiffs were denied the opportunity to object or propose counter-findings. Appellants' complaints in this regard would have been in order under the old practice. Our present Rule 52(b) NRCP quoted in the margin[3] now contemplates ex parte findings subject to the right of the other party to move to amend the same and departs radically from the old procedure.
6. Appellants next attack virtually all the pertinent findings on the ground that they are not supported by the evidence. We have laboriously examined appellants' analysis of the evidence and their arithmetical calculations which arrive at sundry figures varying greatly from those produced by respondents. Those same figures and calculations were before the district court. So were the respondents' books, as well as the testimony of the respondents and their witnesses. It is to such evidence that we must look. If that evidence furnished substantial support for the findings, this is as far as we need inquire. We are of the opinion that it did.
7. The disposition of the foregoing matters leaves for final and brief consideration the meat of the remand for a limited new trial and the trial court's determination thereof. In our partial affirmance of the first judgment, we affirmed the trial court's refusal to grant an accounting for the 1950 operation in the absence of proof of waste, mismanagement, or other facts warranting the order for an accounting. We sustained the district court's finding that the loan transactions between respondents and the corporation were valid, and that advances by respondents for the corporate purposes exceeded their recoveries by some $70,000, but that their appropriation of certain specific assets, namely, cash in hand, cash in bank, accounts receivable, licenses, deposits as security for taxes, utility services, union contracts for entertainers, prepaid insurance, and inventory of liquors, not included in the mortgages, required an accounting, and we remanded for such limited purpose. Respondents accounted in manner satisfactory to the trial court and we have approved that court's acceptance of the method of accounting. That court found that respondents had fully accounted for the items in question and that their account was true, correct, and complete and fully disclosed the extent of said assets and the disposition thereof. This covered the agreed accounting period commencing September 4, 1950. Their books, check records, and bank statements, supported by oral testimony, showed deposits in bank made September 5, 6, and 7, 1950 in a sum aggregating (inclusive of September 5 balance in bank of $1,922.87) $58,459.74. While a large part of this was comprised of checks payable to the corporation, the deposits included $22,300 of "bankroll," $6,725 in currency, and $387.60 coins from slot machines, bar, restaurant, and gaming tables, and $9,533 in coins from the slot machines, bar, and hotel, besides $206.75 from miscellaneous sources. Against these deposits was an itemized list of every check drawn, showing in detail date, number of check, payee, amount and purpose for which drawn. These checks were all for *319 the corporate purposes, and left a balance in the Reno account of $164.67. In like manner deposits in and drafts against the corporation's account at the Stockton branch of the Bank of America were shown, with a balance left in said account of $184.71. The cash items were supported by the testimony of Arata. The items of checks deposited and the checks drawn speak for themselves. The trial court found that the above deposits constituted all the cash moneys of the corporation existing on and after September 4, 1950 and that there were no other cash moneys on hand, in bank, or otherwise, or at all, of defendant Tahoe Enterprises, Incorporated, on or after said date; that the deposits included the $3,500 collected from the Nevada Tax Commission and $4,500 collected from the Actor's Guild, and that the withdrawals were all for business and corporate purposes. The items of recovery of prepaid insurance, $5,345.23, and the telephone deposit of $500, and the power company deposit of $1,000, and the Nevada Industrial Commission deposit of $489.75 were all duly accounted for. The respondents drew out for their own use the two small balances at the banks. The court found that all such recoveries of deposits and bank balances were applied upon and in reduction of the corporation's indebtednesses to the respondents.
In like manner it was shown that the inventory of the liquor stock was appraised at the purchase price of $2,922.53, which was also offset against the obligations of the corporation to the respondents. As to the furniture and personal property sold and accounted for, it may be noted that the inventory and value thereof as fixed by Messrs. Semenza and Kottinger, certified public accountants, in their balance sheet of the administration of the enterprise under appellant Parman corresponded in all material respects with that of certified public accountant Schofield, respondents' accountant. This included all the furniture and fixtures, gaming equipment, linen and bedding, china and glassware, floor coverings, and machinery and equipment of a total net value of approximately $100,000. The court found that the items of personal property accounted for comprised all the personal property of the corporation and that the same had been sold at its full value, and that the account thereof was full, true, and correct, and that the application of the various recoveries of bank balances, prepaid insurance, telephone deposit, power company deposit, insurance commission deposit, and the liquor inventory, aggregating a total of $6,117.48, should be deducted from the balance of $78,691.70 in favor of the respondents, leaving the sum of $72,574.22 still owing by the corporation to respondents, irrespective of any computation of interest. After the September 1950 disbursements no other creditor of the corporation was owed any moneys by the corporation. Such creditors had been paid in full.
Appellants attack the evidence adduced by respondents as being "incredible" and assert that the trial court's acceptance of the favorable balance in favor of respondents in the sum of $78,691.70, reduced only by their further recoveries of $6,117.48, made this court's remand in the former appeal an empty gesture. We think that the purpose of the remand has been accomplished. There had theretofore been no accounting of the cash on hand, cash in bank, personal property, and other items referred to in the remand. Such accounting has now been given to the satisfaction of the trial court. But appellants continue to attack the lack of a permanent method of accounting each time cash was placed into the safe and taken out of the safe. They discount the evidentiary value of Arata's testimony as to the making of deposit tags and withdrawal tags for all moneys placed in and taken from the safe and the forwarding of these tags to the Stockton office for entry, and that all cash was so handled. However, it is not our function to reject relevant and competent evidence accepted by the trial court.
The judgment and the order denying the motion for new trial are affirmed.
McNAMEE and THOMPSON, JJ., concur.
NOTES
[1] NRCP Rule 53(d) (3): "Statement of Accounts. When matters of accounting are in issue before the master, he may prescribe the form in which the accounts shall be submitted and in any proper case may require or receive in evidence a statement by a certified public accountant who is called as a witness. Upon objection of a party to any of the items thus submitted or upon a showing that the form of statement is insufficient, the master may require a different form of statement to be furnished, or the accounts or specific items thereof to be proved by oral examination of the accounting parties or upon written interrogatories or in such other manner as he directs."
[2] The trial court in sustaining an objection to appellants' cross-examination of the accountant witness for appellants said: "But you are asking about the operations of May, June, and July [as against the purpose of the special remand for accounting of the cash and other assets taken over in September], as I understand it, and that is not the purpose of this hearing." Mr. Hutchinson: "Actually my question was directed to where, in these books, can we find the cash outlays for the operation." Such cash outlays were over a considerable period of time within the 1950 operation.
[3] Rule 52(b) NRCP: "Amendment. Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court an objection to such findings or has made a motion to amend them or a motion for judgment."