BETTY KRIEGER, Appellant, *v.* NORVAL J. ELKINS and SHIRLEY ANN ELKINS, dba SH-VAL DRAPERIES and CARPET, Respondents.

No. 12104

December 3, 1980                              620 P.2d 370

*Wiener, Goldwater & Waldman, Ltd.,* and *Gerald M. Gordon,* Las Vegas, for Appellant.

*James L. Buchanan II,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

Appellant sued respondents (lessees) for damages caused by an alleged breach of a lease agreement. Respondents counterclaimed for damages, contending they had been constructively

evicted from the leased premises. Following trial, the district court found that the respondents had been constructively evicted, and entered judgment in their favor for $9,000. This appeal followed, wherein appellant claims the court erred in finding that constructive eviction occurred, in admitting into evidence a document prepared by respondents' accountant which contained a list of the damages suffered by respondents, and in not entering judgment in her favor upon her complaint.

According to evidence presented at the trial, respondents in 1972 leased certain premises from appellant's predecessor in interest for the operation of a drapery and carpet business. The respondents also presented evidence that they had suffered rain damage to their inventory because the premises had a damaged or defective roof, that the lessors were notified of the problems with the roof but failed to make any repairs, and that respondents therefore vacated the premises and moved to a new location in October 1976.

1. Appellant contends the evidence was insufficient to support the finding that constructive eviction occurred. Constructive eviction results from an active interference with, or disturbance of, the tenant's possession by an act of the landlord which renders the whole, or a substantial part of the premises, unfit for occupancy for the purpose for which it was demised. Medical Multiphasic v. Linnecke, 95 Nev. 752, 602 P.2d 182 (1979). Whether constructive eviction has occurred is a factual determination to be made by the trier of fact. Clifmar, Inc. v. Lee, 94 Nev. 594, 584 P.2d 157 (1978). Where the trial court, sitting without a jury, makes a finding upon conflicting evidence that constructive eviction has occurred, that finding will not be disturbed on appeal where it is supported by substantial evidence. *Id.*

Here, the evidence presented at trial was sufficient to support the district court's finding that the lessor's failure to repair the defective roof amounted to such an interference with the leasehold that it caused constructive eviction. *See* Sewell v. Hukill, 356 P.2d 39 (Mont. 1960). We will not disturb that finding.

2. Appellant also argues the district court erred in admitting into evidence account ledgers which listed "relocation expenses" incurred by respondents after they were constructively evicted. Norval Elkins, one of the respondents, testified that the ledgers were compiled from his books and records and were true and accurate expenses. The ledgers, therefore, were

properly admitted. *See* Foster v. Bank of America, 77 Nev. 365, 365 P.2d 313 (1961).

3. Finally, appellant contends the district court erred in not entering judgment in her favor. She argues (a) she is entitled to damages incurred after respondents vacated the premises, and (b) that during the time they occupied the premises the respondents did not pay the correct percentage rental based on gross sales.

Since the district court properly found that respondents had been constructively evicted from the leased premises, it also properly ruled they were not liable for any damages which may have occurred after they vacated the premises. *See* Sewell v. Hukill, *supra*.

However, appellant's argument that respondents improperly excluded certain sales figures from the percentage rental payments during the term of the lease is well-founded. The lease provided:

> 7. PERCENTAGE RENT. In addition to the fixed minimum rent and for the purpose of providing adequate rental to Lessor for Lessee's use and occupancy of the demised premises, Lessee shall pay as percentage rent the amount, if any, by which six per cent (6%) of gross sales (as hereinafter defined) in each calendar month exceeds the minimum rent for the same month.
>
> 8. GROSS SALES. The term "gross sales" as used in this Lease, shall mean the total of: (a) all sales made in, or upon orders placed at, or completed by delivery in, through, or from the demised premises; (b) all charges made for services rendered in or from or upon orders placed at the demised premises; and (c) all sales and charges made in connection with business transacted, in whole or in part in, upon or from the demised premises. Gross sales shall include sales and charges made for cash or upon credit, or partly for cash and partly for credit, without regard to whether or not collection is made of the amounts for which credit is given, and shall also include: (i) sales and charges, whether made by Lessee or any other occupant or occupants of the demised premises or some part or parts thereof; and (ii) sales made by means of mechanical or other vending machine, in, at or on the demised premises. Each sale, charge or business transaction upon installment or contract therefor shall be treated as a gross sale for the full price or charge in year during which such charge or contract is made.

9. EXCLUSIONS FROM GROSS SALES. Gross sales shall exclude delivery charges; refunds for merchandise returned; sales cancelled; allowances or adjustments granted to customer, transfers of merchandise from the demised premises to any other store or stores, warehouse or warehouses of Lessee; merchandise returned to vendors; sales, excise and any other taxes which are added to the selling price of merchandise and labor on installation and paid for by the customer.

In determining gross sales, respondents did not include "outside" sales, *i.e.,* sales made by respondents to customers outside of the leased premises. At trial, Norval Elkins testified that these particular sales were made after the customer telephoned the store. Respondents would then go to the customer's residence, often taking samples of merchandise with them, and then arrange to have the merchandise which the customer ordered delivered directly to him. Elkins testified that he orally agreed with the leasing agent that such sales would not be counted as gross sales in computing the percentage rent.

In our view, these "outside" sales come within gross sales as defined in the lease provision quoted above. They were sales made "in connection with business transacted . . . upon or from the demised premises." *See* Cissna Loan Co. v. Baron, 270 P. 1022 (Wash. 1928). Testimony concerning the alleged oral agreement between Elkins and the leasing agent that outside sales would not be included in the percentage rent contradicted or varied the written terms of the lease concerning gross sales. Such testimony therefore was in violation of the parol evidence rule and should not have been admitted. Daly v. Del E. Webb Corp., 96 Nev. 359, 609 P.2d 319 (1980).

Accordingly, the judgment is reversed insofar as it denied recovery to appellant upon her claim that outside sales were improperly excluded from the percentage rent, and the matter is remanded to the district court with instructions to determine and award to appellant the proper rental payments to which she is entitled. In all other respects the judgment is affirmed.