**130 Nev., Advance Opinion 83**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MASON-MCDUFFIE REAL ESTATE, INC., A NEVADA CORPORATION D/B/A PRUDENTIAL NEVADA REALTY, Appellant, vs. VILLA FIORE DEVELOPMENT, LLC, A NEVADA LIMITED LIABILITY COMPANY, Respondent. | No. 61233 <br><br> FILED <br> OCT 02 2014 <br>  |

Appeal from a district court judgment in a contract action. Second Judicial District Court, Washoe County; Brent T. Adams, Judge.

*Affirmed.*

Olson, Cannon, Gormley, Angulo & Stoberski and Michael E. Stoberski and Matthew A. Cavanaugh, Las Vegas, for Appellant.

Fahrendorf, Viloria, Oliphant & Oster, LLP, and Patrick R. Millsap, Reno, for Respondent.

---

BEFORE PICKERING, PARRAGUIRRE and SAITTA, JJ.

*OPINION*

By the Court, PARRAGUIRRE, J.:

In this appeal, we are asked whether a commercial tenant may be constructively evicted without first providing the landlord notice of and

14-32746

a reasonable opportunity to cure the defect. We conclude that constructive eviction requires that a landlord be given notice of and a reasonable opportunity to cure a defect, and substantial evidence supports the district court's finding that the landlord in this case did not receive notice that the defect continued after repairs were attempted. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant Mason-McDuffie Real Estate, Inc., leased commercial real property in Reno from respondent Villa Fiore Development, LLC. Following a significant water intrusion event in December 2007, Mason-McDuffie vacated the property and ceased paying rent. Thereafter, Villa Fiore filed a complaint in the district court against Mason-McDuffie, alleging that Mason-McDuffie breached the lease. Mason-McDuffie filed an answer and counterclaims, alleging that Villa Fiore constructively evicted Mason-McDuffie by failing to maintain the roof. At a bench trial, the following evidence was presented.

Before Villa Fiore owned the property, Mason-McDuffie leased the property from nonparty Joe Hitch. In 2006, Valerie Mapes, Mason-McDuffie's manager at the time, repeatedly complained to Hitch about water intrusion. In March 2006, Mason-McDuffie sent Hitch a letter describing Hitch's failure to maintain the roof as a material breach of the lease, and Hitch arranged extensive roof repairs in the summer of 2006. After these repairs were made, Mason-McDuffie reported one new leak in a different area, and additional repairs were made in February or March 2007. Hitch received no further complaints about the roof.

Villa Fiore bought the property from Hitch in June 2007. Hitch told Gary Arthur, Villa Fiore's managing member, about the roof's past problems and that the problems had been fixed. Mapes told Arthur that the roof had leaked in the past but not recently. Villa Fiore assumed

the landlord's duties under the lease, including the duty to maintain the roof and protect the interior from water intrusion. In the event that Villa Fiore breached the lease, the lease entitled Mason-McDuffie to pay third parties to cure any defects caused by Villa Fiore's breach and withhold rent in the amount of these payments if Villa Fiore failed to cure the defects within 30 days after receiving written notice of the defects. The lease was to expire in July 2009.

Arthur testified that Mapes called him in October 2007 and told him that the roof was leaking. Arthur went to the property that day, and Mapes showed him two or three areas where water was coming into the building through the roof. A roofing contractor made repairs that day. A few weeks later, Mapes reported roof leaks in different locations. Arthur saw leaks inside the property, but no one could identify their sources outside. Nevertheless, a roofing contractor performed repairs and expressed confidence that the repairs would be effective.

Arthur testified that he was never informed of other water intrusion or mold at the property before Mason-McDuffie vacated the property in December 2007. Arthur testified that he gave Mapes an emergency maintenance phone number. He also asserted that Villa Fiore's maintenance employees told him whenever they performed work at the property, but they never reported additional water intrusion problems. Arthur never received any reports from roofers or mold inspectors hired by Mason-McDuffie.

In contrast, David Hansen, Mason-McDuffie's sales manager in 2007, testified that water intrusion occurred every time it rained, beginning in August 2007. Hansen testified that Mapes called Arthur repeatedly and a maintenance person typically responded. Mason-McDuffie arranged two mold inspections in November 2007, and one

indicated that mold was present in the building while the other indicated that mold was not present. Hansen did not know whether the mold reports were ever given to Arthur or Villa Fiore.

In December 2007, a severe water intrusion event occurred at the property. Hansen testified that Villa Fiore maintenance workers brought buckets to catch water. Hansen testified that Mapes and Mason-McDuffie's attorney tried to call Arthur, but he did not believe that Arthur ever came to the property in response. Mason-McDuffie never sent a letter to Arthur or Villa Fiore like the letter that Mason-McDuffie sent to Hitch in March 2006. Hansen never personally tried to contact Arthur. Mason-McDuffie hired engineers to examine the roof, and the engineers reported that portions of the roof needed to be replaced as soon as possible. This report was not provided to Arthur or Villa Fiore, but Hansen did not know why. In mid-December 2007, Mason-McDuffie vacated the property.

On January 3, 2008, Arthur passed by the property and saw a note on the door stating that Mason-McDuffie had moved. A few days later, Arthur received a letter from Mason-McDuffie stating that Mason-McDuffie considered itself constructively evicted due to the water intrusion. Upon receiving the letter, Arthur called Mapes, and the two exchanged voicemail messages, but they had no further contact. Arthur subsequently sought a new tenant for the property. The new tenant also experienced water intrusion problems, and Villa Fiore eventually replaced the roof in 2009.

The district court did not expressly decide whether Mason-McDuffie was constructively evicted, but found that severe water intrusion justified Mason-McDuffie's vacating the property. The district court also found that Mason-McDuffie did not provide the information that it had in November 2007 regarding the ongoing water intrusion and related mold

SUPREME COURT
OF
NEVADA

(O) 1947A

4

problems to Villa Fiore before vacating the property. Finally, the district court found that Mason-McDuffie did not provide Villa Fiore written notice of the ongoing water intrusion. The district court concluded that the lease obligated Mason-McDuffie to provide Villa Fiore written notice of and 30 days to cure the water intrusion before exercising any other potential remedies. Because Mason-McDuffie did not comply with the notice and cure provision, the district court entered judgment in favor of Villa Fiore. Mason-McDuffie now appeals.

## DISCUSSION

The district court based its judgment in Villa Fiore's favor on its finding that Mason-McDuffie failed to comply with the notice and cure provision of the lease and its conclusion that the lease required Mason-McDuffie to comply with this provision before seeking other remedies, including constructive eviction. Mason-McDuffie first argues that the district court misconstrued the lease. Next, Mason-McDuffie argues that under a theory of constructive eviction, a tenant is not required to provide its landlord with notice of and a reasonable opportunity to cure a defect before vacating the premises. Finally, Mason-McDuffie contends that the district court's findings support an implicit finding of constructive eviction.

We assume without deciding that the lease did not require Mason-McDuffie to comply with the notice and cure provision before asserting constructive eviction. We conclude, however, that constructive eviction requires that a commercial tenant provide a landlord with notice of and a reasonable opportunity to cure a defect. Because the district court's finding that Mason-McDuffie did not provide Villa Fiore notice of the ongoing nature of the water intrusion is supported by substantial evidence, we conclude that the district court's factual findings do not support a finding of constructive eviction. Accordingly, we affirm.

*Standard of review*

Whether constructive eviction requires notice of and an opportunity to cure a defect is a question of law that we review de novo. *See Brady, Vorwerck, Ryder & Caspino v. New Albertson's, Inc.*, 130 Nev. ___, ___, ___ P.3d ___, ___ (Adv. Op. No. 68, August 7, 2014) (recognizing that the interpretation of caselaw is a question of law that this court reviews de novo). "Whether constructive eviction has occurred is a factual determination to be made by the trier of fact." *Krieger v. Elkins*, 96 Nev. 839, 841, 620 P.2d 370, 372 (1980). We will not disturb such a finding if it is supported by substantial evidence. *Id.*; *see also Weddell v. H2O, Inc.*, 128 Nev. ___, ___, 271 P.3d 743, 748 (2012) (stating that this court will not overturn factual findings that are supported by substantial evidence). Substantial evidence is "'that which a reasonable mind might accept as adequate to support a conclusion.'" *Otak Nev., L.L.C. v. Eighth Judicial Dist. Court*, 129 Nev. ___, ___, 312 P.3d 491, 496 (2013) (quoting *Finkel v. Cashman Prof'l, Inc.*, 128 Nev. ___, ___, 270 P.3d 1259, 1262 (2012)).

*Constructive eviction requires that the landlord have notice of and a reasonable opportunity to cure the defect*

We have required a party alleging constructive eviction to prove three elements. First, the landlord must either act or fail to act. *Yee v. Weiss*, 110 Nev. 657, 660, 877 P.2d 510, 512 (1994). Second, the landlord's action or inaction must render "the whole or a substantial part of the premises . . . unfit for occupancy for the purpose for which it was leased." *Id.* Third, the tenant must actually vacate the premises within a reasonable time. *Schultz v. Provenzano*, 69 Nev. 324, 328, 251 P.2d 294, 296 (1952).

Villa Fiore argues that there is a fourth essential element of constructive eviction, that the tenant provide the landlord notice of and a

reasonable opportunity to cure the defect. We have not previously discussed this proposed element, but it is not foreclosed by our decisions. Accordingly, we look to other jurisdictions for guidance. *See City of Las Vegas v. Cliff Shadows Prof'l Plaza, L.L.C.*, 129 Nev. ___, ___ n.4, 293 P.3d 860, 865 n.4 (2013) ("This court has often relied on the decisions of other jurisdictions when, as here, it is faced with issues of first impression."). Other jurisdictions have stated that constructive eviction cannot occur unless the landlord has notice of and a reasonable opportunity to cure the defect. *E.g., Home Rentals Corp. v. Curtis*, 602 N.E.2d 859, 863 (Ill. App. Ct. 1992) ("[A] tenant may not abandon premises under the theory of constructive eviction without first affording the lessor a reasonable opportunity to correct the defects in the property."); *Pague v. Petroleum Prods., Inc.*, 461 P.2d 317, 319 (Wash. 1969) ("In order for a vacating tenant to claim constructive eviction, it is essential that he give the landlord notice of the act or condition complained of and an opportunity to remove or correct the condition."); *see also* Restatement (Second) of Prop.: Landlord & Tenant § 5.4 (1977) (stating that a tenant may seek remedies for a landlord's failure to make repairs if "the landlord does not correct the situation within a reasonable time after being requested by the tenant to do so").

A landlord cannot be expected to cure a defect if the landlord is unaware that the defect exists. *See Krieger*, 96 Nev. at 841, 620 P.2d at 372 (stating that substantial evidence supported the district court's finding of constructive eviction where the landlord was "notified of the problems . . . but failed to make any repairs"). Requiring a commercial tenant to provide a landlord notice of and a reasonable opportunity to cure a defect in the leased premises as an element of constructive eviction encourages the parties to discuss and potentially resolve deficient

conditions in leased premises outside of the courts. *See Conference Ctr. Ltd. v. TRC—The Research Corp. of New England*, 455 A.2d 857, 863-64 (Conn. 1983) (recognizing that requiring notice and an opportunity to cure under a theory of constructive eviction is desirable because it provides "an opportunity for dialogue to establish whether the parties intend to repudiate or to fulfill their contractual obligations"). In contrast, declining to impose such an element would require landlords to intrude upon tenants' right to possess leased premises in order to guard against claims of constructive eviction by conducting frequent inspections. *See State v. White*, 130 Nev. ___, ___ n.3 , 330 P.3d 482, 486 n.3 (2014) (stating that "a landlord does not have an absolute right to enter a property he or she owns because the landlord conveys the right of possession to the tenant"). Requiring a tenant to provide notice of and a reasonable opportunity to cure a defect as an element of constructive eviction thus protects both landlords' expectations in rental income and tenants' rights to possess the leased premises free from excessive intrusions by the landlord.

Therefore, we hold that a commercial tenant alleging that it was constructively evicted must show, in addition to the three elements stated in *Yee* and *Schultz*, that it provided the landlord notice of and a reasonable opportunity to cure the defect. *See, e.g., Home Rentals Corp.*, 602 N.E.2d at 863.[1]

---

[1]Mason-McDuffie argues that notice and a reasonable opportunity to cure are not required for constructive eviction, relying on *Milheim v. Baxter*, 103 P. 376, 377 (Colo. 1909). The court in *Milheim* concluded that, under the circumstances of that case, notice was not required because the landlord already "had full knowledge" of and no intent to cure the defect. *Id. Milheim* thus stands only for the proposition that a tenant need not provide the landlord with notice of a defect if the landlord already knows of

*continued on next page...*

*The district court's findings are supported by substantial evidence, but they do not support a finding of constructive eviction*

Applying this rule to the circumstances presented here, we conclude that the district court's factual findings are supported by substantial evidence, but these findings do not support Mason-McDuffie's argument that it was constructively evicted.

The district court found, based on substantial evidence, that severe water intrusion rendered the property unfit for occupancy in December 2007, and it is undisputed that Mason-McDuffie vacated the property in a reasonable time. Given that the lease expressly imposed upon Villa Fiore the duty to maintain the roof, we also assume for the purpose of argument that the district court implicitly found that Villa Fiore failed to maintain the roof, thus causing the severe water intrusion. *See Luciano v. Diercks*, 97 Nev. 637, 639, 637 P.2d 1219, 1220 (1981) ("[T]his court will imply findings of fact and conclusions of law so long as the record is clear and will support the judgment."). Thus, the three elements of constructive eviction set forth in *Yee* and *Schultz* were satisfied. *See Otak Nev.*, 129 Nev. at ___, 312 P.3d at 496; *Krieger*, 96 Nev. at 841, 620 P.2d at 372.

But the district court also found that Mason-McDuffie knew that the water intrusion and related mold problems were ongoing in November 2007 but never provided this information to Villa Fiore before vacating the premises. Although Hansen testified that Villa Fiore maintenance employees were at the property in December 2007, Arthur

---

*...continued*
the defect through other means and has failed to cure it. *See id.*; *Krieger*, 96 Nev. at 841, 620 P.2d at 372. Therefore, this argument is unpersuasive.

Supreme Court
OF
Nevada

(O) 1947A

9

testified that Villa Fiore employees always told him when they performed work at the property and no one did so in December 2007. Hansen testified that Mapes tried to call Arthur in December 2007 to no avail. But Arthur testified that he responded to Mapes' calls promptly in the past and that he believed the problems were resolved because no one told him about water intrusion after October 2007. Mason-McDuffie also had documentation of the ongoing water intrusion that it, inexplicably, never provided to Arthur or Villa Fiore. Thus, the district court's finding that Mason-McDuffie did not provide the information regarding the failure of the roof that it had in November 2007 to Villa Fiore before vacating the property is supported by substantial, although conflicting, evidence.

Mason-McDuffie argues that it provided Villa Fiore notice of and an opportunity to cure the prior water intrusion and that this satisfied any notice and opportunity to cure obligation that Mason-McDuffie had under a theory of constructive eviction. Notice that the water intrusion continued despite Villa Fiore's attempted repairs was important because without further complaints from Mason-McDuffie, Villa Fiore would have no reason to believe that the repairs were ineffective. *See SGM P'ship v. Nelson*, 705 P.2d 49, 52 (Haw. Ct. App. 1985) (requiring a tenant to give a landlord notice that attempted repairs were insufficient in order to assert constructive eviction based on the insufficiency of the repairs). Because Villa Fiore attempted repairs and the district court found on substantial evidence that Mason-McDuffie did not inform Villa Fiore that these repairs were ineffective, we conclude that Mason-McDuffie's notice of prior water intrusion was insufficient to satisfy its notice and cure obligation under a theory of constructive eviction. *See id.*

While the evidence in this case is conflicting, it nevertheless constitutes substantial evidence supporting the district court's finding that

Mason-McDuffie did not inform Villa Fiore that the water intrusion and related problems continued after the last repairs in October 2007 before vacating the property in December 2007. Thus, Mason-McDuffie did not satisfy the fourth element of constructive eviction, notice of and a reasonable opportunity to cure the defect.

## *CONCLUSION*

Because the district court found that Mason-McDuffie did not provide Villa Fiore notice of and a reasonable opportunity to cure the ongoing water intrusion, the district court's factual findings do not support Mason-McDuffie's argument that it was constructively evicted. As a result, we need not address whether Mason-McDuffie was required to comply with the lease's notice and cure provision in order to successfully assert constructive eviction, and we affirm the judgment. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. ___, ___, 245 P.3d 1198, 1202 (2010) ("This court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason.").

_____, J.
Parraguirre

We concur:

_____, J.
Pickering

_____, J.
Saitta